SWIFT, Judge.
Silton Turner, plaintiff, has sued his employer, J & J Wells Construction Company, and its insurer, Tri-State Insurance Company, for workmen’s compensation benefits. It is undisputed that Turner was struck on the right side of his head by a falling tree limb in the course of his employment as a logger on June 19, 1979. The trial judge found the plaintiff was temporarily totally disabled and awarded him compensation at a rate of $141.00 per week from June 19, 1979, to August 11,1980, subject to a credit of $1,692.00 for compensation paid through September 11, 1979. The judgment also included $1,600.60 for unpaid medical bills and $318.40 for travel expenses. The trial judge denied Turner’s demand for an attorney’s fee and penalties. The defendants have appealed. Turner answered the appeal seeking total and permanent disability benefits, an additional $137.00 in medical bills, a reasonable attorney’s fee and statutory penalties.
The defendants contend the trial judge erred, in light of the expert medical testimony, in finding Turner is temporarily totally disabled due to substantial pain.
The plaintiff said that he was unconscious for about 30 minutes, but was driven home and then seen by Dr. Newell E. Gau-thier, Jr. of Cottonport the day of the accident. The latter’s report in evidence reflects that he found pain on palpitation of the left forehead and shoulder and noticed swelling and discoloration. There were no apparent fractures. His diagnosis was simply a contused forehead and a contused shoulder.
The plaintiff further testified he went to the Marksville Hospital that day and on June 20, 1979, he was x-rayed at the hospital in New Rhodes. They sent him to Our Lady of the Lake Hospital in Baton Rouge. However, the record contains no information as to who saw Turner or what was done at the two hospitals first mentioned.
At Our Lady of the Lake he was finally referred to Dr. David G. Fourrier, who after x-rays were taken reported his impression that plaintiff had sustained a right frontal temporal skull fracture with a non-displaced right orbital rim and a frontozy-gomatic suture fracture. Inasmuch as 24 hours had passed since the accident and the neurological examination was “grossly intact”, the doctor did not believe hospitalization was necessary. No treatment was recommended, because there was no displacement of bones and no adverse optical findings. Dr. Fourrier also saw plaintiff on June 22 and confirmed his first examination. A follow-up examination was scheduled two weeks later, but the plaintiff did not appear.
Mr. Turner said he had been told by his employer’s representative to see whatever doctor he wished and therefore went to Lake Charles for an examination by Dr. William F. Foster, a neurosurgeon, for an appointment made by a relative. Dr. Foster had him admitted to the Lake Charles Memorial Hospital on June 23, where he stayed until June 27 for a complete neurological examination and other tests. All of these, including x-rays, were essentially normal. Plaintiff was also seen in consultation by Dr. Clark Gunderson, an orthopedic surgeon, who concluded that plaintiff had sustained a contusion of his right shoulder with no bony problems. Dr. Foster reexamined plaintiff on July 12, August 9 and September 11. His final diagnosis of plaintiff’s condition was a cerebral concussion with mild post-concussion syndrome and a contusion of the right shoulder. He reported plaintiff had fully recovered and was able to return to his previous occupation as a logger on September 11, 1979.
In the meantime, on July 4, 1979, Turner was examined by Dr. Edmond J. Kalifey of Marksville in connection with an application for welfare assistance. His complaints were the same as reported to the other doctors, i. e., headaches, dizziness, poor memory and pain in the right shoulder. This doctor’s examination was reported as “unremarkable”, but he expressed the opinion that plaintiff was unable to work because of his symptoms which were compatible with a post-concussion type syndrome. Dr. Kalifey suggested a neurological evaluation.
*554 Dr. John R. Clifford, a Baton Rouge neurosurgeon, saw the plaintiff on October 22, 1979. He thought Turner had been referred to him by Dr. Kalifey. His neurological examination was much the same as Dr. Poster’s as was his final diagnosis of a post-concussion syndrome. Dr. Clifford said that plaintiff was fully capable of getting back to work and that his complaints of headaches were “largely functional in nature” and needed to be deemphasized to the patient. He felt that returning to work would be good “treatment” as it would get Turner’s mind on things other than his complaints. The physician said that he “would not be the least concerned about” plaintiff’s complaints of sharp head pains lasting only a few seconds. Dr. Clifford agreed with Dr. Fourrier’s findings and conclusion that no treatment was necessary in June 1979.
On February 7, 1980, the plaintiff was seen at the request of his attorney by Dr. John N. Patton, an Alexandria neurosurgeon, for his complaint of intermittent brief shooting pains just above the right eye. The neurological examination was completely normal and the doctor stated his findings were essentially the same as those of Dr. Foster in regard to the post-concussion syndrome. He also agreed with Dr. Foster’s opinion that plaintiff was able to resume his. work on September 11. He testified that he had never had a patient with a post-concussion syndrome that experienced shooting pains as described by plaintiff; usually it was a chronic nagging headache that lasted hours or days at a time. However, this doctor testified he “would give him the benefit of the doubt and say that his symptoms are genuine, and I would expect though that he will make a complete recovery eventually.” Further, although he was unable to find anything on the neurological examination that would indicate disability, he testified that if these brief periods of pain are “severe enough to interfere with his work then perhaps he is disabled, but that’s the only thing I have been able to find.” He said he could not “quantitate his degree of pain.”
The plaintiff’s complaints of pain and disability were confirmed to some extent by his wife, who added that he had not been able to feed the hogs and cut grass “too much.” However, he has never attempted to return to work as a logger.
The trial judge concluded that on the basis of Dr. Patton’s and plaintiff’s testimony he continued to suffer head pain which caused him to be totally disabled until August 11, 1980.
It is well settled that a person is totally disabled if he would be subjected to substantial and appreciable pain on returning to work. However, the employee must prove such disabling pain to a legal certainty and fair preponderance of the evidence. Whether or not he has carried this burden must be determined from the totality of the evidence, including both medical and lay testimony. Guidry v. Ford, Bacon & Davis Const. Corp., 376 So.2d 352 (La. App. 3 Cir. 1979); Breaux v. Kaplan Rice Mill, Inc., 280 So.2d 923 (La.App. 3 Cir. 1973).
In this case the plaintiff was examined thoroughly and completely by three neurosurgeons, specialists in the field of plaintiff’s complaints. Their tests and diagnoses were the same and none could find any basis for the headaches of which plaintiff complained. All agreed that plaintiff was able to work on September 11, 1979. However, Dr. Patton decided to give him the “benefit of the doubt” and said Turner’s unusual brief shooting head pains were genuine. Nevertheless, Dr. Patton did not testify that they were so substantial that plaintiff could not work. He said simply that “if” they were severe enough then “perhaps ” he is disabled. This testimony is obviously speculative and conjectural and in our opinion cannot overcome the overwhelming medical testimony to the contrary on the issue of disability. Nor was the lay testimony convincing.
While we are reluctant to reverse the trial judge on this factual issue, it is our duty to do so when he is clearly wrong. We are unable to say his finding that plaintiff was disabled from gainful employment from the accident until September 11, 1979, *555 was so erroneous. However, it is clear to us the trial judge was manifestly in error in concluding that Mr. Turner established by a preponderance of evidence that he was suffering substantial and appreciable pain which disabled him thereafter. Accordingly, the judgment will be amended so as to award workmen’s compensation benefits only up to that date.
Although it is a close question because no medical treatment was prescribed by Dr. Foster, having concluded that plaintiff was disabled when the medical expenses were incurred in Lake Charles we find they were reasonable and necessary and will affirm the trial judge’s award thereof as well as the award for travel expenses. However, we are convinced that the examinations by Dr. Patton were principally for evaluation for trial despite his prescription of an analgesic. The disallowance of such medical bill therefore will be affirmed.
We agree with the trial court’s determination that the defendants’ refusal to pay the benefits in this instance was not arbitrary and capricious and that plaintiff is not entitled to statutory penalties and an attorney’s fee.
For the foregoing reasons, the judgment of the district court is amended so as to award weekly compensation benefits up to September 11, 1979, instead of August 11, 1980, and as amended it is affirmed. The costs of this appeal are assessed to plaintiff-appellee.
AMENDED AND AFFIRMED.