SCHOTT, Judge.
In this worker’s compensation case the extent of plaintiff’s disability is the principal issue. He has appealed from the judgment of the trial court awarding benefits for partial disability under LSA-R.S. 23:1221(3) contending that he is entitled to benefits for permanent total disability under § 1221(2). The defendants, his employer and the employer’s insurer, have answer *207 ed the appeal seeking a limitation of recovery to that for a scheduled disability for the loss of an arm under § 1221(4)(f). Plaintiff also seeks penalties and attorney fees based upon defendants’ arbitrary and capricious termination of compensation benefits, and defendants contend that an award of $254 of medical expense incurred by plaintiff with Dr. Gordon Nutik was improperly awarded to plaintiff.
Plaintiff was employed by Celotex Corporation as a common laborer and suffered an injury on the job on February 17, 1977, when he fell down and struck his left shoulder on a piece of metal. He was placed on maximum compensation from that time until September 15,1978, when the compensation was reduced to $30 per week where it remained until March 25, 1980, when compensation benefits were terminated. The first reduction was based on a report to defendants by Dr. R. E. Horn, Jr., who gave him a 20% partial, permanent disability of the left upper extremity at that time. The termination of benefits was based on a report of February 12, 1980, by Dr. R. C. Grunsten that there was no reason why plaintiff could not participate in daily laboring activities, although he might have some difficulty in full overhead elevation of the extremity with force.
Following his injury, plaintiff was treated by Dr. Horn, an orthopedic surgeon. He diagnosed a left shoulder cuff tear which he treated conservatively until March 15 when it was surgically repaired. Following a course of physiotherapy plaintiff was readmitted to the hospital where a closed manipulation under general anesthesia was performed on July 14 in order to free an adhesive capulitis or frozen shoulder which had developed. He was continued on physiotherapy and treatment by Dr. Horn. By November, 1977, he had shown some improvement but had marked limitation of motion of the left upper extremity demonstrated by his inability to abduct beyond 45° as compared to normal abduction of above 90°. When Dr. Horn next saw plaintiff in June, 1978, his range of motion was still limited in the left shoulder. Dr. Horn next saw plaintiff in January, 1979, and because of his continued difficulty transcu-taneous electrical nerve stimulation was started in order to relieve his pain. Dr. Horn last saw plaintiff in February, 1979, and found that no relief had been provided by the TENS and he periodically prescribed a mild pain medication for plaintiff thereafter.
Plaintiff was then seen by Dr. Grunsten on August 9, 1977, on referral by Dr. Horn who wanted a second orthopedic opinion because he thought plaintiff should have made more progress , than he seemed to have under his treatment. On this first examination of plaintiff, Dr. Grunsten found that he was still disabled and recommended continued physical exercise in order to restore the muscle in his upper arm. Dr. Grunsten next saw plaintiff on February 12, 1980, at the request of defendants. At that time plaintiff had complaints of pain in his neck on the left side as well as his right shoulder and low back. An orthopedic examination revealed no explanation for these complaints and when given tests for his left shoulder he reached a maximum elevation of 45° in abduction and maximum of 80° in anterior flexion. However, Dr. Grunsten explained that these tests are subjective with the patient being required to raise his arm to the extent he can. However, Dr. Grunsten noted that as plaintiff disrobed he pulled off an undershirt overhead and elevated his left shoulder well above 90° to approximately 110°. He also found that the forearm circumferences and arm circumferences were equal between the right and the left extremities which led Dr. Grun-sten to believe that plaintiff had regained the muscle that was missing on the first examination and had necessarily been using his upper extremity since the date of the last examination two and one half years before. This opinion was also reinforced by his finding of good muscle mass in the deltoid muscle region of each shoulder area as well as in the biceps regions bilaterally, and equal callus formation in both palms of his hands. From his examination Dr. Grun-sten concluded that there was no reason why plaintiff could not participate in daily laboring activities, and while he may have *208 some difficulty in full overhead elevation of the extremity with force, he could accomplish the majority of routine activities without difficulty and without significant discomfort.
Plaintiff was also seen by Dr. Nutik, an orthopedist, first in July, 1979, on a referral by the Social Security Administration for disability evaluation. He concluded from his examination that plaintiff could not do heavy work of a common laborer at that time. On April 22, 1980, plaintiff was again examined by Dr. Nutik, this time at the request of plaintiff’s counsel, and he found that plaintiff’s condition was about the same. He concluded that plaintiff was totally disabled from heavy work with a 60% disability of the left shoulder. However, he acknowledged that the primary test to determine limitation of motion in plaintiff’s arm was subjective and asked whether his opinion would have been changed had he, like Dr. Grunsten, witnessed plaintiff raising his left arm above his head while removing his undershirt, he replied that “it would severely change my opinion during my exam and I would have maybe looked for different things.”
The trial court also had the benefit of a report from orthopedist, Dr. James T. Williams, who examined plaintiff on September 6, 1978, at the request of the Social Security Administration. Dr. Williams found that plaintiff was uncooperative and prevented him from obtaining an evaluation of the range of motion in his shoulder. He concluded that there was no orthopedic reason why plaintiff should not return to work.
The trial judge concluded that plaintiff did not prove by a preponderance of medical evidence that he could not work without substantial pain but the “totality of the evidence is sufficient to support a holding that plaintiff is permanently partially disabled, based in part on claimant’s testimony of pain and the conflict in medical testimony.”
We are confronted with a classic case requiring the trial judge to reach a factual conclusion based on conflicting testimony where the credibility of plaintiff is the crucial issue in the case. Although medical testimony is frequently based on objective tests given by the physicians each opinion here as to the extent of the disability in plaintiff’s left arm is based almost exclusively on the extent to which plaintiff can or will raise his arm when asked to do so by the examining physician. Dr. Grunsten’s testimony that plaintiff in fact elevated his arm at an unsuspecting time while he was disrobing was quite significant to both of the doctors who testified favorably to plaintiff’s case and provided a strong basis for supporting Dr. Grunsten’s opinion of limited disability as opposed to the other physicians’ opinion. Plaintiff testified at trial that he experiences terrible pain when he attempts to exercise the left shoulder area, and yet Dr. Grunsten found physical evidence that he had used his left arm and hand regularly for two and a half years before his second examination. Finally, plaintiff testified that the pain is so bad that it wakes him up from sleep during the night. Dr. Horn expressed doubt that his injury could cause that kind of pain. Thus, there is no manifest error in the trial judge’s conclusion that plaintiff failed to prove his case of total and permanent disability.
However, plaintiff contends that the limitations on his ability to work because of his inability to lift with force over his head places him in the category of an “odd lot” employee as in Lattin v. Hica Corp., 395 So.2d 690 (La.1981) and Oster v. Wetzel Printing Inc., 390 So.2d 1318 (La.1980). In these cases the court held that the plaintiff made out a prima facie case for classification in the odd lot category if he proved that his physical condition, mental capacity, education, training, age or other factors combined to place him at a substantial disadvantage in the competitive labor market. The odd-lot doctrine also applies if plaintiff can prove that he can function only with substantial pain and that such pain appreciably limits the type of work available to him and greatly diminishes his ability to compete in the labor market. Plaintiff did not carry his burden of proof to bring himself within the scope of the odd-lot doctrine. The trial court *209 found, and the record supports this finding, that he exaggerated the extent of his disability and that he was able to perform the duties of a common laborer except for his inability to lift his arms over his head forcefully. There is no proof in the record that such a minor limitation would prevent plaintiff from competing in the labor market for the work of a common laborer.
As to defendants’ answer to the appeal its contention that the record does not support the award of partial disability benefits and that the benefits should be reduced to those applicable to a partial loss of the arm, we again defer to the trial court’s fact finding function and find no manifest error in his conclusion. However, the award to plaintiff of $254 for evaluations by Dr. Nutik was erroneous. Dr. Nu-tik did not treat plaintiff but only evaluated him, first at the request of Social Security and next at plaintiff’s counsel’s request. Such medical charges for evaluation are not chargeable to the compensation carrier, Turner v. J. & J. Wells Contractors, Inc., 396 So.2d 552 (La.App. 3rd Cir. 1981) writs refused, 399 So.2d 620.
Finally, the judgment of the trial court fails to give credit to defendants for the compensation they paid between February 12, 1977, and March 25, 1978, and judgment will be amended in this respect.
Accordingly, the judgment appealed from is affirmed but is amended to delete from the award to plaintiff the medical expense of $254 and to extend to defendants credit for all compensation paid between February 11, 1977, and March 25, 1980.
AFFIRMED AND AMENDED.