422 So.2d 657 (1982)
Flora M. WILLIAMS, Plaintiff-Appellant,
v.
COMMERCIAL UNION ASSURANCE COMPANY, Defendant-Appellee.
No. 82-287.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
Guillory, McGee, Mayeux & Fontenot, John G. Fontenot, Eunice, for plaintiff-appellant.
Guglielmo & Lopez, Peter F. Caviness, Opelousas, for defendant-appellee.
Before FORET, CUTRER and STOKER, JJ.
STOKER, Judge.
Plaintiff, Flora Williams, appeals from an adverse judgment in her suit for worker's compensation benefits. She suffered a back strain on September 29, 1978, while lifting a patient in the Bayou Vista Nursing Home where she was employed. Commercial Union Assurance Company, defendant herein, is Bayou Vista's worker's compensation insurer. Plaintiff sued Commercial Union only. The issue on appeal is whether Flora was disabled by the accident beyond August 20, 1979. We affirm the judgment of the trial court insofar as it holds that plaintiff was not disabled, but reverse the denial of certain outstanding medical expenses.
*658 The details surrounding the on-the-job accident are not seriously disputed. While Flora and another aide were attempting to lift a particularly heavy patient, the patient slipped and her entire weight was shifted to Flora. It is undisputed that Flora suffered a lumbarsacral strain as a result, and she received compensation benefits from September 30, 1978, through August 23, 1979. The medical expenses incurred by Flora during this time were also paid by defendant.

DISABILITY
From the date of her accident until the time of trial, Flora was seen by numerous doctors of varied specialties. Only the testimony of the most significant of these will be addressed.
After some weekly visits to a general practitioner, Flora was referred to Dr. J. Frazer Gaar, an orthopedic surgeon, on November 7, 1978. His diagnosis was that of lumbarsacral strain and the treatment given Flora was "conservative" according to the doctor. He recommended diet and exercise, gave her a corset to wear, and advised her to avoid heavy lifting, bending, or straining. Dr. Gaar and Flora discussed surgical excision of the disc, but this was never recommended by the doctor, contrary to plaintiff's contentions on appeal. Further, it does not appear to us that Dr. Gaar became "an advocate against the plaintiff" nor do we find any reason for him to have done so.
Dr. Gaar continued to treat Flora until August 20, 1979, at which time he reported to the Mason Perrault Claims Service that:
"My examinations have revealed no significant clinical problems. I am of the opinion that she has probably reached a medical plateau in regards to her back complaints. I feel that this lady probably has been symptomatic with chronic lumbarsacral strain, with periodic episodes of radiculitis. I have not seen anything lately to make me feel that she is having any acute problems. For this reason, I feel that her problem has probably resolved to the extent that I feel she probably can get back to her previous type work at the nursing home. She of course, may have intermittent low back difficulty, however I would relate this to her obesity as being the responsible factor involved. I do not feel that anything further is indicated at this time and I am releasing her from my care. She states that she is considering seeing another physician for another opinion. I am not objectionable to this. Should she do so, I would be happy to make my records available to anyone.
"It is also my opinion that there is no residual permanent physical impairment nor loss of physical function as a result of her so stated injury of one year ago. She is released today."
In reliance on this report, Commercial Union stopped all benefits as of August 23, 1979.
Flora saw Dr. John Tassin, a general practitioner, for the first time on August 21, 1979, apparently for a second opinion. She saw him approximately four more times until September 18, 1980. He recommended the same type treatment that had been given by Dr. Gaar and that Flora not do any heavy lifting or use her back excessively. However, Dr. Tassin stated in his deposition that other people would probably be more qualified to say how much of Flora's problems were related to the accident because he did not see her until a year later.
Dr. William Foster, a neurosurgeon, also saw Flora during this time. Her initial visit with him was on September 12, 1979, at which time he felt that a discogram should be performed. He admitted Flora to the hospital on September 16, 1979, and she remained there until October 1,1979. None of the tests performed during this time, including the discogram, showed any organic reason for Flora's continued complaints.
The other doctors of note seen by Flora are psychiatrists. Dr. William Cloyd evaluated her at her attorney's request on March 21, 1980. The interview was approximately two hours. At that time it was his opinion that she was disabled due to depressive *659 neurosis causally related to the accident. He saw her again on November 5,1980, and his opinion then was "... that from the standpoint of the depression that she was not disabled but looking at it overall in an individual of limited intellectual and emotional assets that certainly most probably from the overall standpoint she was disabled." This statement is equivocal at best, particularly in regard to the issue of causation.
At the request of defendant's counsel, Dr. Gilles Morin also gave a psychiatric evaluation of Flora on April 30, 1980. This interview lasted about fifty minutes. Dr. Morin agreed with Dr. Cloyd's finding of depression but felt that it would not stop her from returning to full employment.
Plaintiff relies heavily on the testimony of Dr. Tassin who recommended that Flora not do any heavy lifting, excessive bending, or other exercise involving the low back. Plaintiff also relies on the statement by Dr. Cloyd regarding disability. Much emphasis is also given to the lay testimony of Flora's husband and her neighbor to the effect that Flora was a changed person after the accident and that she could no longer do the things she had done before. Thus, it would appear that the claim of disability is based on physical as well as emotional aspects.
As to physical aspects of disability, it is well established that the testimony of a specialist is entitled to greater weight than that of a general practitioner. Blue v. Kinney Company, Inc., 256 So.2d 145 (La.App. 3rd Cir.1971), writ refused, 260 La. 1119, 258 So.2d 375 (1972). Dr. Gaar and Dr. Foster were the main specialists in this case, and neither found any organic reason for Flora's continued complaints. Dr. Foster felt that further tests were required. These tests, the principal one being the discogram, failed to objectively corroborate Flora's problems. Dr. Tassin himself admits that he is not in the best position to evaluate Flora's condition.
The emotional aspect of the disability as testified to by Dr. Cloyd was called "depressive neurosis". This court in Andrus v. Rimmer & Garrett, Inc., 316 So.2d 433 (La.App. 3rd Cir.1975) stated:
"Where a claimant seeks workmen's compensation for neurotic disability, traumatic neurosis, et seq., such condition must be proven, as in any other disabling injury, by a preponderance of the evidence. Such condition must not only be shown to exist but also that it was causally connected with the work related accident. (Citations omitted)
"Our jurisprudence has further indicated that in such cases the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of such a condition and the possibility of the symptoms being easily feigned. The evidence in cases of this nature should be scrutinized carefully and every precaution taken to protect employers and insurers against unjustified claims because of alleged mental affliction." (Citations omitted.)
See also Babineaux v. Consolidated Aluminum Corporation, 389 So.2d 818 (La.App. 3rd Cir.1980). In view of the equivocal nature of the statement given by Dr. Cloyd quoted supra, we do not believe the trial court erred in finding the plaintiff was not disabled on an emotional basis.
Despite the holding of the Louisiana Supreme Court in Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La. 1975), that medical and lay testimony must be considered even if there is no conflict in the medical, it is clear that the credibility of this evidence is still to be determined by the trial court. Absent clear error a trial court's determination will not be disturbed on appeal. No such error appears in this case.

MEDICAL EXPENSES
Defendant terminated all payments to plaintiff as of August 23, 1979, refusing to pay the expenses incurred as a result of her hospitalization by Dr. Foster. In light of Dr. Foster's statement that he felt the discogram was required, it appears that the expenses were necessary and within those contemplated by LSA-R.S. 23:1203. Cf. *660 Turner v. J & J Wells Contractors, Inc., 396 So.2d 552 (La.App. 3rd Cir.1981), writ denied, 399 So.2d 620 (La.1981). The amount of these expenses as set out in a letter dated November 5, 1979, from plaintiff's counsel to defendant's counsel is $3,174.54.
Plaintiff also demands reimbursement for travel expenses incurred in traveling to and from her various doctors. The only proof of these expenses is a rough list of some trips with dates and mileage. There is no proof of how the trips were made or what actual expenses were incurred in making them. In the absence of such proof, plaintiff is not entitled to reimbursement for these expenses. Romano v. Davis, 339 So.2d 1309 (La.App. 1st Cir.1976).
Plaintiff's demand for penalties and attorney's fees is also rejected. Defendant's failure to pay the medical expenses awarded to plaintiff herein was not arbitrary, capricious, or without probable cause.
Except insofar as the trial court's judgment failed to award the medical expenses attributable to the services of Dr. Foster, the judgment is affirmed. Insofar as the judgment denied those medical expenses it is reversed, and judgment is now given in favor of plaintiff-appellant, Flora M. Williams, and against defendant-appellee, Commercial Union Assurance Company, in the sum of $3,174.54 together with legal interest from date of judicial demand until paid. The costs of this proceeding in the trial court and on this appeal are assessed one-half to plaintiff-appellant and one-half to defendant-appellee.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.