592 So.2d 478 (1991)
Samuel James LANDRY, Plaintiff-Appellant,
v.
CENTRAL INDUSTRIES, INC. and ABC Insurance Company, Defendants-Appellees.
No. 90-711.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1991.
Writ Denied February 28, 1992.
*479 Juneau, Judice, Hill & Adley, Kraig T. Strenge, Lafayette, for plaintiff-appellant.
Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, Frank A. Flynn, Thomas A. Bubetti, Lafayette, for defendants-appellees.
Before LABORDE, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This is a worker's compensation case. Samuel James Landry injured his back while in the course and scope of his employment as a roustabout laborer with defendant, Central Industries, Inc. (Central). The trial court held that Landry was temporarily totally disabled under the Louisiana Worker's Compensation Law, was being paid an appropriate amount of worker's compensation benefits, and was not entitled to attorney's fees or penalties for defendant's refusal to guarantee payment of some recommended medical treatments. However, the trial court ordered Central to pay for one of the recommended diagnostic studies, called a discogram, and an orthopedic back brace, assessed penalties for defendant's failure to provide requested medical reports, and required Central to pay costs of the proceeding including doctors' deposition fees. Landry appeals this decision and raises two assignments of error, while Central raises three additional assignments in its answer to the appeal.
Central is in the business of oilfield construction services. Landry's back was injured on February 4, 1988, while he was helping build a road out of eighteen foot long boards. Another employee accidently pushed a board towards Landry when he was stuck in mud up to his knees. The board bent him backwards. He told the crew foreman what happened and sat at the job site for the rest of the day with a burning pain in his back and right leg. When Landry returned to the office that afternoon, a dispatcher told him to go see a doctor at the Med-Health Center.
Dr. Thomas Callendar initially treated Landry at the Med-Health Center the day of the accident and diagnosed him as having a lumbar strain. Dr. Callendar first referred Landry to Dr. James McDaniel, an orthopedic surgeon. Dr. McDaniel conducted a physical examination and opined that Landry voluntarily restricted the exam by intentionally tightening his back and faking muscle spasms. Dr. McDaniel found no objective signs of injury but only plaintiff's subjective complaints which he classified as unphysiologic responses, or those which cannot be explained by a physical problem. After examining the results of a CT scan, a bone scan, an EMG, and a nerve conduction test, Dr. McDaniel felt that Landry had no orthopedic or neurological problem which would prevent him from returning to normal activities, including work.
Dr. Callendar next referred Landry to Dr. Thomas Laborde, a doctor who specializes in a field of physical medicine and rehabilitation called physiatry. This specialty is based upon non-surgical orthopedics and neurology. Dr. Laborde examined Landry and found muscle spasms in the lower back, a restricted range of back motion, and pain in the low back, hip, and right leg. Thereafter, he treated Landry fourteen times using a lumbar-thermogram test and several epidural steroid block treatments. Dr. Laborde was of the opinion *480 that Landry's complaints were related to the injury and felt that the plaintiff should be enrolled in the progressive/aggressive conditioning program (PAC Program) at Our Lady of Lourdes Hospital in Lafayette. He did not recommend that Landry return to a heavy manual labor job without further medical treatment.
Landry was also examined by Dr. John Cobb, an orthopedic surgeon of his own choice. Dr. Cobb saw him three times and categorized him as suffering from posttraumatic lumbar pain syndrome. Dr. Cobb was also of the opinion that the workrelated injury was the cause of the complaints but felt that a further diagnostic test called a discogram should be performed. He stated that Landry should not return to work until further tests were made.
Finally, Landry was examined by a clinical psychologist, Dr. Jimmie Cole, at the request of Our Lady of Lourdes Hospital, to determine if he would be a good candidate for the PAC Program. Dr. Cole saw the plaintiff twice and felt that his pain was physical, not psychological or imaginary. Dr. Cole was initially concerned that Landry had a motivational problem and took too many medical drugs which might inhibit completion of the program. However, after Landry told the doctor that he would give it his maximum effort, Dr. Cole recommended him as a good candidate for the PAC Program.
Additional tests conducted were several epidural steroid blocks, a thermogram, and an MRI. The results of all tests were normal except for the MRI and the thermogram. The MRI did not reveal a herniated disc but some degeneration between two discs was noted. However, the testimony was in dispute as to whether this degeneration was normal in a person of Landry's age. There was also some medical disagreement as to the reliability of the thermogram test.
One of the issues raised by Central in its answer to the appeal is whether the trial court erred in finding that Landry was entitled to temporary total disability benefits under the Louisiana Worker's Compensation Act. Central feels that the lower court committed manifest error in its finding that Landry established by a preponderance of the evidence that he was unable to engage in self employment or gainful employment as required by La.R.S. 23:1221(1).
Whether or not a plaintiff is temporarily totally disabled is a question of fact to be determined by the trial court. If this decision is based upon reasonable evaluations of credibility, such a determination of fact should not be disturbed on appeal when there is evidence before the trier or fact which furnishes a reasonable factual basis for such a finding, unless such findings are clearly wrong. Sinegal v. Louisiana Blasters, Inc., 546 So.2d 308 (La.App. 3rd Cir.1989).
Central points to Dr. McDaniel's opinion that Landry could return to work. However, both Dr. Cobb and Dr. Laborde were of the opinion that Landry should not return to work without further medical treatment. Landry also told the court that he could not work because of a burning pain and numbness in his lower back. We cannot say that the trial court erred in concluding Landry was unable to engage in self or gainful employment under these facts. Temporary total disability requires proof only by a simple preponderance. Talley v. Enserch Corp., 508 So.2d 197 (La.App. 3rd Cir.1987), writ denied, 513 So.2d 289 (La.1987).
In his first assignment of error, Landry contends that the trial court erred in calculating his weekly disability rate. The plaintiff started receiving $71 in benefits per week thirteen days after the accident. Landry believes that the trial court miscalculated his disability rate and that he should have been receiving $106.68 in weekly benefits.
Temporary total disability benefits are calculated at the rate of 66-2/3% of wages during the period of disability. La.R.S. 23:1221(1). The statutory definition of wages is set forth in La.R.S. 23:1021(10). Landry argues the application of subsection (a)(i), which states:

*481 If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater;
Central contends that the trial court properly applied subsection (a)(ii) which states:
If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident;
According to the trial testimony, the plaintiff was employed as a roustabout laborer at $4.00 per hour. Sometimes he would work over 40 hours a week and sometimes less, depending upon work availability and on whether or not he chose to show up. While Landry was considered a full-time employee, he was never promised full-time work, was never guaranteed a specified amount of employment hours per week, and was only offered work when it became available or on a need basis. The plaintiff could miss work anytime for whatever reason and not be penalized for his failure to show up when work was offered. Landry knew that he only worked when it was available and never requested full-time employment.
In the four full weeks before the week of the accident, Landry worked 4 hours, 12 hours, 25.5 hours, and 14 hours per week respectively. Payroll evidence is in the record covering five months, beginning in September, before the accident. In September Landry worked three 40-hour weeks, but missed one other day while his co-workers were on the job. In October he had three 40-hour weeks and missed one day during that month while his co-workers were on the job. During the month of November, he had three 40-hour weeks (including one vacation week) and missed two days of available employment. In December he had two 40-hour weeks and missed four days. In January he had no 40-hour weeks and missed ½ days of available employment. Finally, Landry missed one day of available work in February before his February 7 accident. Thus, his case does not exactly fall into either Section 1021(10)(a)(i) or section 1021(10)(a)(ii). As explained by H. Alston Johnson, a worker may put himself into a part-time status by choosing to work fewer than full-time hours. If he does so, he will fall into the classification provided by Section 1021(10)(a)(ii), by "regularly, and at his discretion" working less than 40 hours per week. Johnson anticipated the plight this court is now in when he observed that "[i]t is unclear what the word `regularly' may mean in this context." W. Malone & H. Johnson, Worker's Compensation Law and Practice, 14 La. Civil Law Treatise § 322 (1991). Between September 1987 and the accident, there were fourteen weeks where 40 hour work weeks were available according to the time records. Landry worked only eleven 40-hour weeks (including one vacation week) during that period. In the four full weeks before the accident he worked none. The trial court concluded that Landry's absences, when he chose not to work, were unexplained. The trial court interpreted Landry's conduct as a choice to regularly and at his own discretion, work less than a 40-hour week. We cannot say this was clear error on these facts.
In his second assignment of error, Landry contends that the trial court erred by denying his claim for penalties and attorney's fees because Central arbitrarily and capriciously denied him reasonable and necessary medical treatment. Central paid the bills submitted by Dr. Callendar, Dr. McDaniel, Dr. Laborde, and Dr. Cobb. Landry feels that Central should have authorized payment either for the discogram recommended by Dr. Cobb, or the PAC Program recommended by Dr. Laborde.
Under La.R.S. 23:1201 and 23:1201.2, an insurer who arbitrarily and capriciously fails to pay compensation claims may be liable for penalties and attorney's fees. However, these statutes are penal in nature and must be strictly construed so that employers are not penalized *482 for taking close factual questions to court for resolution, and for relying on valid defenses. Broussard v. Grey Wolf Drilling Co., 562 So.2d 1006 (La.App. 3rd Cir.1990), writ denied, 567 So.2d 102 (La.1990).
In the present case, there is a difference of opinion between the physicians who treated Landry. Dr. McDaniel was of the opinion that Landry was faking back spasms. He found no objective signs of injury, and believed that the plaintiff could return to work. Dr. Laborde was of the opinion that Landry's complaints were caused by the work-related injury and felt that the plaintiff should be enrolled in the PAC Program. Dr. Cobb also believed that the work-related injury was the cause of Landry's complaints but felt that a discogram should be performed.
Wendell Guillory, the risk manager for Central, testified that he gave Dr. McDaniel's opinion greater weight when denying the request for the PAC Program recommended by Dr. Laborde, and the discogram recommended by Dr. Cobb. He also denied payment for the PAC Program because Landry had previously been unable to complete a work-hardening program which is one of the three main elements of the PAC Program. Guillory found no definite findings in any of the medical reports that the PAC Program would help Landry. Payment for the discogram was denied after Guillory consulted with Dr. McDaniel and Dr. Callendar and they could not agree that it was a positive test for Landry's complaints.
A worker is not entitled to statutory penalties and attorney's fees in a worker's compensation case where his employer relied upon competent medical advice in making the decision not to guarantee the payment of a recommended medical treatment. Bernard v. Woodrow Wilson Const. Inc., 526 So.2d 1248 (La.App. 3rd Cir.1988), writ denied, 528 So.2d 152 (La.1988). Guillory relied upon the competent medical advice of Dr. McDaniel to deny payment for both the PAC Program and the discogram. We cannot say that this reliance was arbitrary and capricious. Additionally, the trial court's decision on penalties and attorney's fees is essentially a question of fact and should not be reversed unless clearly wrong. Martin v. Travelers Ins. Co., 546 So.2d 958 (La.App. 3rd Cir.1989).
Another issue raised by Central in its answer to the appeal is whether the trial court erred in finding that Landry was entitled to further medical treatment. The trial court ordered Central to pay for the discogram and held that a determination regarding the PAC Program would be made after performance of the discogram.
Central argues that this decision is manifestly erroneous because Landry failed to prove these were reasonable and necessary medical expenses incurred as a result of his work related accident under La.R.S. 23:1203(A). They point out that Dr. McDaniel felt that the discogram was a bad test because a 1960 survey indicated the test always disclosed that 1/3 of those tested had abnormal discograms. Central also attacks the wisdom of the PAC Program.
The trial court ordered Central to pay only for the discogram. A trial court can order an employer to pay for any future surgery performed to correct an employee's work-related back injury. Campbell v. Luke Const. Co., 543 So.2d 1032 (La.App. 3rd Cir.1989). This court has held that where a neurosurgeon suggested that a discogram should be performed on an injured worker, the expenses of such discogram were reasonable and necessary and should have been paid by the employer's insurer. Williams v. Commercial Union Assur. Co., 422 So.2d 657 (La.App. 3rd Cir.1982). Therefore, the trial court did not commit manifest error by ordering Central to pay for the discogram. This court does not rule on the PAC Program because the trial court has not made a determination on that issue.
Finally, Central contends that the trial court erred in assessing the expert witness fee of Dr. Laborde. The trial court assessed costs and awarded Dr. Laborde $875, Dr. Cobb $450, and Dr. McDaniel $400 for their depositions. Dr. Laborde's 121 page deposition took two hours and fifteen minutes and he charged $350/hour *483 for that service. He billed Landry for two and one-half hours thus arriving at the cost of $875 for the deposition. Dr. Cobb charged a flat fee of $450 for his deposition which totalled 51 pages and took 50 minutes to give in the present case. Dr. McDaniel charged a flat fee of $400 for his deposition which was 52 pages long.
La.R.S. 13:3666 vests the trial court with discretion in fixing expert witness fees and the trial court's award of such fees will not be disturbed on appeal absent an abuse of discretion. Pitts v. Bailes, 551 So.2d 1363 (La.App. 3rd Cir.1989), writ denied, 553 So.2d 860 (La.1989), writ denied, 556 So.2d 1262 (La.1990). This court has recently held that an award of $750 for an expert witness fee was not an abuse of discretion when a doctor drove from Alexandria to Ferriday and testified at trial. Pitts v. Bailes, supra. This court has also recently held that a trial court did not abuse its discretion in awarding expert witness fees of $800 each to two physicians who testified at trial. Petersen v. State Farm Auto. Ins. Co., 543 So.2d 109 (La.App. 3rd Cir.1989).
In the present case, Dr. Laborde did not testify at trial. Additionally, he did not travel to give the deposition because it was conducted in his office. However, it is our opinion that the statute dealing with compensation of expert witnesses, La.R.S. 13:3666, has application to the fixing of fees of doctors whose testimony at trial is by way of deposition. The amount a doctor charges to give a deposition is not conclusive in fixing the amount of his fee for that deposition. Williamson v. St. Francis Medical Center, 559 So.2d 929 (La.App.2d Cir.1990). In the present case the fees allowed for the three doctors for their depositions were the same as their charges. The appellants complain only about the $875 award to Dr. Laborde. When the time taken and the length of the three depositions are compared, the fees awarded to the three doctors are not substantially different. There is no basis in this record for us to make a distinction between Dr. LaBorde's award and that of the others. We find no abuse of discretion.
For the foregoing reasons, the judgment of the trial court is affirmed. The plaintiff and the defendants will share equally the costs of this appeal.
AFFIRMED.