627 So.2d 676 (1993)
Joshua HOPES, Plaintiff-Appellant,
v.
DOMTAR INDUSTRIES, Defendant-Appellee.
No. 93-127.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
*677 David Hugh McCroskey, New Iberia, for Joshua Hopes.
Mark Louis Riley, Lafayette, for Domtar Industries.
Before STOKER, DOUCET and SAUNDERS, JJ.
*678 SAUNDERS, Judge.
Plaintiff-appellant brought this worker's compensation suit against his employer seeking recognition of permanent and total disability or, alternatively, restoration of his temporary total disability benefits and for penalties and attorney fees. At the time of his March 6, 1992, hearing, plaintiff was receiving supplemental earnings benefits. His reduction in benefits followed a neurosurgeon's findings that plaintiff had reached maximum cure and could work in some capacity by June 22, 1989, notwithstanding plaintiff's persistent complaints to the contrary. Judgment was rendered dismissing most of plaintiff's demands. Plaintiff appeals. We affirm in part, reverse in part and render.

FACTS
Joshua Hopes was employed in the Domtar salt mine from 1966 until becoming disabled on December 6, 1983, while handling a fifty (50) pound sack of nitrate. At the time of his injury, the illiterate father of eleven (11) was a powder man whose responsibilities involved placing and charging the various explosive chemicals and devices necessary to extract salt from subterranean geological faces.
As a result of the accident of December 6, 1983, Commercial Union began payment of compensation at the rate of $245.00 per week, the maximum amount payable at that time, based upon plaintiff's average weekly wage of $513.00. These payments were continued until the rate was reduced due to his former employer's conclusion that Mr. Hopes was able to earn minimum wage for forty (40) hours a week. This conclusion was based upon a neurosurgeon's finding that plaintiff's condition had stabilized by June 22, 1989.[1]
Mr. Hopes was initially treated by Dr. LeBlanc of New Iberia. In 1984, surgery was performed on a herniated disc at L3-4 and L4-5. Dr. LeBlanc referred Mr. Hopes to Dr. John Jackson, a Metairie neurosurgeon. Dr. Jackson performed a second surgery in 1987. Still Mr. Hopes' back pain persisted. On May 12, 1988, Dr. Jackson recommended that rehabilitation efforts be commenced. Domtar's compensation insurer, Commercial Union, retained the services of ConservCo to begin Mr. Hopes' rehabilitation. Many jobs were identified by Mr. Robert Hebert of ConservCo based upon Dr. Jackson's evaluations regarding Mr. Hopes' physical condition. Only three of these jobs were approved by Dr. Jackson, each based entirely upon job descriptions furnished by ConservCo, whose representative never met with Dr. Jackson. The company made no efforts to retrain Mr. Hopes.
On June 22, 1989, Dr. Jackson indicated that Mr. Hopes had reached maximum medical improvement notwithstanding Mr. Hopes' persistent complaints of pain. Dr. Jackson acknowledged that Mr. Hopes would never be capable of performing heavy manual labor or straining his back. He imposed additional specific restrictions on Mr. Hopes. Twenty (20) pounds was the maximum he could lift occasionally, but frequent lifting and carrying of objects was limited to a maximum of 10 pounds. In an eight hour day, plaintiff could occasionally bend, stoop, kneel, or reach, but could never climb or pull. Pushing motions were also ruled out, although Dr. Jackson's testimony makes it unclear whether plaintiff could only occasionally or never push during an eight hour work day. As a result of his June 22, 1989, findings combined with Dr. Jackson's approval of Mr. Hopes for the three job descriptions provided him by ConservCo, plaintiff's benefits were reduced to supplemental earnings benefits on October 16, 1990.[2]
Not getting better, Mr. Hopes returned to see Dr. Jackson in April and June of 1991 with continuing complaints of pain. On those occasions, Dr. Jackson took X-rays of plaintiff and concluded that Mr. Hopes remained capable of doing light duty work.
When Mr. Hopes again returned to Dr. Jackson on January 20, 1992, CT Scans were *679 taken which objectively revealed for the first time the cause of plaintiff's continuing complaints. Dr. Jackson made a clear finding that hypertrophic changes had developed in plaintiff's back which, according to the doctor's testimony, had indeed rendered Mr. Hopes disabled, which disability had continued since at least April 11, 1991.
On February 20, 1992, one month after discovering his error as to plaintiff's previous condition, Dr. Jackson concluded that surgery could eliminate plaintiff's newly found back troubles and return Mr. Hopes to his June, 1989, status of maximum medical improvement.

Procedural History
Mr. Hopes challenged his October 16, 1990, reclassification to supplemental earnings benefits (as a result of Dr. Jackson's finding of June 22, 1989), seeking to be found temporarily or permanently totally disabled. The matter was heard by a hearing officer of the Office of Workers' Compensation on March 6, 1992. Judgment was eventually rendered decreeing that:
(1) The claimant was properly reclassified from temporary total disability to supplemental earnings benefits on June 22, 1989, the date Dr. Jackson concluded that the claimant's condition had stabilized to a point of maximum medical improvement;
(2) From the period of January 1992 (when Dr. Jackson discussed the hypertrophic spinal changes) through June 1992, Mr. Hopes would be entitled to temporary total disability benefits;
(3) After June 1992, Mr. Hopes would be reclassified again to supplemental earnings benefits unless he elected to have a corrective surgical procedure suggested by Dr. Jackson, in which event he would remain temporarily totally disabled until released by Dr. Jackson;

(4) That no penalties or attorney's fees were due because defendants did not act arbitrarily, capriciously or without probable cause in denying plaintiff total disability based on Dr. Jackson's June, 1989, findings and subsequent approval of the positions scouted by ConservCo.
From this judgment, plaintiff appeals requesting this Court to reverse the ruling of the Office of Workers' Compensation.

EXTENT OF EMPLOYEE'S DISABILITY
The issues before us concern the propriety and timing of Mr. Hopes' supplemental earnings benefits status, first, as a result of Dr. Jackson's June 22, 1989, finding that Mr. Hopes had reached maximum medical benefit, and second, as a result of the hearing officer's findings that plaintiff's anticipated surgery would return him to his June 22, 1989, status of maximum medical benefit.
This appeal concerns the extent of Mr. Hopes' disability under the Louisiana Worker's Compensation Act as amended by Act 1 of the 1st Extraordinary Session of 1983.
"In order for an employee to recover benefits under the Worker's Compensation Statutes of the State of Louisiana he must show that he received a personal injury by way of an accident arising out of and in the course and scope of his employment, and said injury necessitated medical treatment and/or rendered the employee either temporary totally disabled, permanent totally disabled, entitled to supplemental earning benefits, and/or permanent partially disabled. LSA-R.S. 23:1021; 1031; 1203; and 1221."
Alfred v. Mid-South Mach., Inc., 594 So.2d 937, 939 (La.App. 3d Cir.1992). On appeal, there is no dispute that:
Mr. Hopes' reading and writing abilities are extremely limited;
Even with the operation proposed in January of 1992 by Dr. Jackson, plaintiff would be limited forever to light duty work at best;
The claimant's 1983 injuries occurred while he was in the course and scope of his employment.
In addition, there is no question that Mr. Hopes' employer timely paid all medical bills.
*680 Therefore, the dispute solely concerns the nature of the benefits to which plaintiff is entitled. Plaintiff contends that he is permanently and totally disabled; in the alternative, Mr. Hopes assigns as error the hearing officer's removing him from temporary total disability effective June 22, 1989, when Dr. Jackson concluded his medical condition reached a plateau. Defendant concedes that plaintiff's injuries are permanent, but denies that plaintiff's total disability is permanent. The employer argues that plaintiff was only entitled to supplemental earnings benefits at the time his temporary total benefits were terminated because by then Dr. Jackson concluded that Mr. Hopes had achieved maximum medical benefit and was not so disabled as to be precluded from any employment. For this reason, defendant would have us affirm the hearing officer's determination that the claimant was entitled to only S.E.B. status after June 22, 1989 (with the exception of the period between January 20, 1992, when Dr. Jackson detected the latest defect in plaintiff's back, and his discharge from the proposed back surgery, should it occur, or June 1992, whichever is later).
The first logical question therefore concerns whether Hopes was totally disabled, permanently or temporarily, after June 22, 1989, within the meaning of LSA-R.S. 23:1221(1) and (2). The pertinent provisions then in force provided as follows:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

Permanent Total Disability
These provisions of the statute (the "1983 amendments") became effective on July 1, 1983, and placed a more stringent burden of proof upon a claimant seeking benefits for permanent total disability, insofar as LSA-R.S. 23:1221(2)(c) required a claimant to prove by clear and convincing evidence that he was totally and permanently disabled. Price v. Fireman's Fund Ins. Co., 502 So.2d 1078, 1080 (La.1987); Anthony v. Georgia Pacific Corp., 589 So.2d 47, 49 (La.App. 1st Cir.1991), writ denied, 594 So.2d 895 (La. 1992); Johnson v. Acadian Contractors, 590 So.2d 623, 626 (La.App. 3d Cir.1991), writ denied, 591 So.2d 700 (La.1992); Brewster v. *681 Manville Forest Products, 469 So.2d 340, 345 (La.App. 2d Cir.1985).
"[C]lear and convincing evidence is appropriately characterized as a degree of evidence greater than a preponderance of the evidence but less than beyond a reasonable doubt. Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La. 1976)."
France v. A & M Wood Co., 566 So.2d 106, 111 (La.App. 2d Cir.1990).
There is no basis for reversing the hearing officer's finding that Mr. Hopes was not permanently totally disabled. Dr. Jackson, whose opinion was relied upon by both plaintiff and defendant, did not find that plaintiff's physical condition would prevent him forever from engaging in any self-employment or gainful occupation for wages. Rather, Dr. Jackson merely placed restrictions on the types of activities in which plaintiff could one day engage and the duration of time, without rest, that plaintiff could one day work. Dr. Jackson unequivocally opined that Hopes could one day engage in sedentary work or light duty manual labor even though another operation was necessary. In view of Mr. Hopes' likelihood of future improvement, it is clear that plaintiff did not meet the statutory definition of total and permanent disability at his hearing. Frazier v. Conagra, Inc., 552 So.2d 536, 543 (La.App. 2d Cir.1989), writ denied, 559 So.2d 124 (La. 1990). Even if plaintiff's disability after June 22, 1989, was total, he failed to prove that it was permanent. See Price, supra, 502 So.2d at 1080. Certainly, such a showing has not been made by clear and convincing evidence. Therefore, we affirm this initial finding of the hearing officer.

Temporary Total Disability
Next, we consider whether plaintiff was entitled to temporary total disability after June 22, 1989. By Act No. 454, § 6 of 1989, effective January 1, 1990, the legislature amended LSA-R.S. 23:1221(1) by adding subparagraph (1)(c), which redefined temporary total disability to the stringent standards required to prove a claim for permanent total disability. Since plaintiff was injured December 6, 1983, the question of his temporary total disability falls under the lesser burden imposed upon him by the 1983 amendments to the Worker's Compensation Act. Those amendments require temporary total disability (as opposed to permanent total disability) to be proven by a preponderance of the evidence, not by the more burdensome clear and convincing evidence standard:
"In construing La.R.S. 23:1221(1) prior to the amendment, our courts consistently applied pre-1983 standards finding a plaintiff entitled to temporary total disability benefits upon proof by a preponderance of the evidence that the worker's pain was substantial or appreciable and prevented him/ her from engaging in employment. Marcotte v. Gulf Builders, Inc., 525 So.2d 208 (La.App. 1st Cir.1988), writ denied, 530 So.2d 88 (La.1988); Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3rd Cir.1986), writ denied, 497 So.2d 312 (La.1986); Johnson v. Monroe Pulpwood Co., Inc., 505 So.2d 862 (La.App. 2d Cir.1987)."
Rosella v. DeDe's Wholesale Florist, 607 So.2d 1055, 1060 (La.App. 3d Cir.1992). In accord, Price, supra, 502 So.2d at 1080; Landry v. Central Industries, Inc., 592 So.2d 478, 480 (La.App. 3d Cir.1991), writ denied, 593 So.2d 381 (La.1992); Brewster, supra, 469 So.2d at 345; Romero v. Grey Wolf Drilling Co., 594 So.2d 1008, 1010 (La.App. 3d Cir.1992). Therefore, since the accident giving rise to Mr. Hopes' injury occurred in 1983 and not in 1990, Mr. Hopes only had to show by a preponderance of the evidence that his pain was substantial and prevented his return to work.
The hearing officer's conclusion that Mr. Hopes had reached maximum recovery by June 22, 1989, entitling him to no more than S.E.B., should not be lightly disturbed.
"Whether a claimant's pain is substantial enough to be disabling is a question of fact that must be determined according to the circumstances of each individual case. Augustine v. Courtney Construction Company of Alexandria, Inc., 405 So.2d 579 (La. App. 3rd Cir.1981), writ denied, 407 So.2d 735 (La.1981). The manifest error standard of review applies in worker's compensation *682 cases and great deference is accorded to the trial judge's (hearing officer's) factual findings and reasonable evaluations of credibility. Dixon v. Louisiana Restaurant Association Through Self Insurers Service Bureau, Inc., 561 So.2d 135 (La. App. 3rd Cir.1990)."
Rosella, 607 So.2d at 1062. The same standard is applicable to the more important question of whether Mr. Hopes was entitled to temporary total disability after June 22, 1989:
"Whether or not a plaintiff is temporarily totally disabled is a question of fact to be determined by the trial court. If this decision is based upon reasonable evaluations of credibility, such a determination of fact should not be disturbed on appeal when there is evidence before the trier or fact which furnishes a reasonable factual basis for such a finding, unless such findings are clearly wrong. Sinegal v. Louisiana Blasters, Inc., 546 So.2d 308 (La.App. 3rd Cir.1989)."
Landry, supra, 592 So.2d at 480. (Emphasis ours.) The same manifest error rule of review is applied to matters arising under Office of Worker's Compensation hearing officers as is applied to trial judges.
However, as suggested by the emphasis above, we are not bound to give such deference to conclusions which are clearly wrong.
"Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. See, Wilson v. Jacobs, 438 So.2d 1119 (La.App. 2d Cir.1982), writ denied, 443 So.2d 586 (La.1983). Cf. State v. Mussall, 523 So.2d 1305 (La.1988); Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); U.S. v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)."
Rosell v. Esco, 549 So.2d 840, 844-845 (La. 1989).
In addition to Dr. Jackson, who testified via deposition, the only other testimony offered in these proceedings was by Mr. Lanny Spence, the last of a string of claims adjusters asked by Commercial Union Insurance Company to work Mr. Hopes' file; Robert Hebert, the second agent assigned to Mr. Hopes by ConservCo, the firm retained by the compensation insurer, Commercial Union, to provide "rehabilitation"; the plaintiff; and his spouse of 32 years.
Spence testified that ConservCo was retained by Commercial Union to find possible work situations fitting plaintiff's characteristics following Dr. Jackson's June 22, 1989, determination that Mr. Hopes had reached maximum medical improvement. Hebert testified that he considered obtaining Dr. Jackson's medical approval on some thirty possible positions for plaintiff before winnowing the list to a handful. For these, he provided job descriptions on standard summary forms which he dispatched to Dr. Jackson for his medical approval. Some of these requests were issued to the doctor months prior to the doctor's work release of plaintiff. Eventually, the doctor signed off on three. Armed with Dr. Jackson's June 22, 1989, medical conclusions and job approvals, the worker's compensation insurer reduced plaintiff's benefits to S.E.B. status. The hearing officer concluded that Mr. Hopes' employer did not err in doing so. For the following reasons, he was clearly wrong, and we reverse.
Dr. Jackson testified that he first saw Joshua Hopes on May 12, 1986, on a referral from Dr. Richard LeBlanc who was plaintiff's treating physician since his 1983 accident. X-rays and CAT Scans taken in August 1984 showed disc problems at L3-4 and L4-5 which still existed when a subsequent CAT Scan was taken March 4, 1986. A diskectomy and a fusion were performed at both locations. Plaintiff's disability persisted with pain through 1987, at times requiring his use of a cane or even a walker. Mr. Hopes wore a back brace for four months. On January 7, 1988, plaintiff returned for a follow-up visit complaining of pain but regaining some strength as evidenced by his ability to walk about six blocks a day. In March of 1988, plaintiff again returned for follow-up, complaining of pain in the lower back and the left *683 upper thigh, but apparently improving. By May 12, 1988, plaintiff was able to walk two miles a day. Although plaintiff was still hurting, according to the doctor he was "definitely improving." Dr. Jackson recommended that plaintiff be placed in rehabilitation to strengthen his back provided the therapist not require plaintiff to lift more than 25 pounds during the course of his treatment.
On June 22, 1989, Dr. Jackson indicated that Hopes had, in his opinion, reached maximum medical improvement. He indicated that there was nothing more to offer Mr. Hopes in the way of medical treatment and he did not believe plaintiff would improve anymore medically. He restricted plaintiff to sedentary or very light work and ordered him to refrain from doing anything that might put a strain on his back.
Plaintiff returned to see Dr. Jackson on April 16, 1991, complaining of intermittent and throbbing pains on the left side of the buttocks, radiating down the left leg to the knee area. The doctor took X-rays of the lumbar spine and noted some motion, but hoped that medication and rest would correct this motion. Dr. Jackson decided to keep plaintiff under observation with the hope that no further surgery would be required.
Plaintiff returned to see Dr. Jackson on January 20, 1992, to be evaluated. Pains persisted in the left leg down to just above the left knee. Lumbar spine X-rays showed a solid fusion at L3-4 and L4-5good signsbut a CT Scan of L3-4 indicated that a hypertrophic change had at some point occurred in the left margin of L3, causing plaintiff's persistent pains. Plaintiff's pains were inexplicable until Dr. Jackson took a CT Scan, his first of Mr. Hopes, which for the first time provided objective corroboration for plaintiff's persistent complaints. Dr. Jackson described his findings in his deposition:
"After studying these films, I believe the reason Mr. Hopes is still having pain in the left leg and left anterior thigh is because he has developed some hypertrophy of bone growth on the left side of the body of the vertebra that encroaches into the neural foramen and is compressing the nerve root at that level.
This narrows the neural foramen significantly. I believe it is enough to cause the pain he experiences over his left anterior thigh."
Dr. Jackson testified that the error first made known to him by CT Scans taken January 20, 1992, extended back at least to the time of his conclusion that plaintiff had reached a point at which he was still capable of working:
"In the April of '91 visit, did you still feel that he was capable of light-duty work at that time?
He was complaining, and I thought he probably was until I got this last scan, and this shows that he has a spur that built up, and you get that if you have some motion in the fusion. Bone begins to develop. I guess it is a response on the part of the bone."

* * * * * *
Even under the stringent standards applied in RosellArceneauxCanter line of jurisprudence, the conclusion is inescapable that the hearing officer committed manifest error in finding that plaintiff was not entitled to temporary total disability benefits in the wake of Dr. Jackson's admission that his prior conclusions concerning Mr. Hopes' capacity to work were faultily premised. Subsequent to his finding maximum medical improvement on June 22, 1989, Dr. Jackson had only three occasions to see plaintiff, April 1991, July 1991, and January 20, 1992. Dr. Jackson concedes his error ran at least from April 1991 through January 20, 1992. His determination that a back operation would remove plaintiff's persistent pains and return plaintiff to his medical status of June 1989 (when he initially diagnosed plaintiff's maximum medical benefit) ipso facto negated his June 1989 finding of maximum medical benefit.
The opinion of a physician or other medical expert does not necessarily determine a legal disability because a finding of disability vel non is a legal rather than a purely medical determination. DeGruy v. Pala, Inc., 525 So.2d 1124, 1133 (La.App. 1st Cir.), writ denied, 530 So.2d 568 (La.1988). *684 In light of Dr. Jackson's uncontradicted testimony, the hearing officer clearly erred in concluding that plaintiff had achieved maximum medical cure in June 1989.
Similarly, the hearing officer erred when he chose to ignore the complaints of persistent back pain expressed by Mr. Hopes and corroborated by his wife. The only evidence he could possibly have relied on in doing so was that of Dr. Jackson, but Dr. Jackson himself later admitted that Mr. Hopes' case defied objective evaluations of disability:
"Q Now, on the last visit with the changes you saw, did you feel that he was capable of light-duty work, or did you feel that he was capable to do whatever he could tolerate with the pain he had, or did you feel he was disabled?
"A I felt he was capable of doing everything he was doing if he could tolerate the pain.
"Q So at this time you do not feel that he is disabled. It would depend on how much pain he had?
"A It depends on how much pain. If he has pain, it will irritate the nerve root and make the pain worse, so if he has pain he shouldn't do it.
"Q If his pain is insufficient in his own mind to justify a surgical procedure, do you feel at that point then that he should again look at rehabilitation and attempting to work?
"A Well, if he can live with his pain, then I will advise that he get into some type of sedentary work because I think light work is only going to irritate his nerve root and make his pain worse, and so I think you should go down one level further, and that is sedentary work if he can tolerate his pain.
"If he can't tolerate his pain, he shouldn't do that. Sometimes sitting at a desk with a spur like that will aggravate the condition and cause pain."
The probative value of the testimony by the claims adjuster and vocational rehabilitation person relied intrinsically on the correctness of Dr. Jackson's June 22, 1989, inability to locate plaintiff's problems in the limited diagnostic evaluations then performed. As Dr. Jackson himself admitted, he did not have a full understanding of plaintiff's medical history. For this reason, his evaluation loses much of its persuasiveness, see Alfred, supra, 594 So.2d at 939, as does the testimony of Commercial Union adjuster Spence and ConservCo agent Hebert to the extent that their testimony was premised on Dr. Jackson's erroneous medical findings derived from the limited diagnostic testing performed June 22, 1989. Both Mr. Hopes and his wife testified under oath that plaintiff's back pains were disabling and unrelenting. Dr. Jackson testified that plaintiff's disability depended strictly upon Mr. Hopes' subjective feelings. These factors rendered erroneous the hearing officer's conclusion that plaintiff was not temporarily totally disabled prior to January 20, 1992, when he first observed the source of plaintiff's persistent back problem. Plaintiff showed by subjective complaint, the only diagnostic tool available according to the doctor, that he was totally disabled.
It is clear that the only credible evidence which sheds light on plaintiff's disability during this period comes from testimony by plaintiff. Both Hopes and his wife's uncontradicted testimony reveals unmitigated pain during this period, and it was inappropriate for the hearing officer to ignore their testimony.
"In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony. Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967); Farley v. Ryan Stevedoring Co., 238 La. 1048, 117 So.2d 587 (1960); Bonanno v. Decedue, 186 La. 1041, 173 So. 756 (1937). (In each of these instances, the trial court's finding of fact was reversed due to its failure to observe this principle.)"
West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La.1979). In accord, Holiday v. Borden Chemical, 508 So.2d 1381 (La.1987). In light of these facts, the hearing officer clearly erred in his application of the law. When there is proof of an accident and an *685 ensuing disability without any intervening cause, it is presumed that the accident caused the disability. Tucker v. Pony Exp. Courier Corp., 562 So.2d 897, 900 (La.1990); Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1982); Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816, 821 (1969).
Temporary total disability at the time of plaintiff's injury required proof only by a simple preponderance, Landry v. Central Industries, Inc., 592 So.2d 478, 480 (La.App. 3d Cir.1991), writ denied, 593 So.2d 381 (La. 1992). We find by a strong preponderance of the evidence that at the time of hearing, plaintiff Hopes was totally disabled. His likely recovery following the operation to treat his newly diagnosed symptoms of his work related back injury may ultimately bar him from permanent total disability, Anderson v. Aetna Cas. & Sur. Co., 505 So.2d 199, 205 (La.App. 3d Cir.), writ denied, 511 So.2d 1152 (La.1987); Breaux v. Travelers Ins. Co., 526 So.2d 284 (La.App. 3d Cir. 1988) but it does not bar him from recovering temporary total disability until that time. Therefore, we conclude that plaintiff-appellant Hopes has been entitled to temporary total disability from the date of his disabling injury until either party shows a lawful ground for a change in his status. Johnson v. Ins. Co. of N. America, 454 So.2d 1113, 1117-1119 (La.1984); Alfred v. City of Eunice, 503 So.2d 1131 (La.App. 3d Cir.), writ denied, 505 So.2d 63 (La.1987). Our finding in favor of plaintiff on this issue is consistent with that reached by our brethren of the Second Circuit in Brewster, supra, 469 So.2d at 346:
"While the evidence shows that the plaintiff should recover to a point where he will be able to engage in some type of gainful occupation, at the time of trial plaintiff's condition had not stabilized and he was in need of further medical testing and treatment. Under these circumstances, plaintiff's disability would be a temporary total disability rather than permanent.
Therefore, this court finds that when an injured manual laborer is disabled at the time of trial from performing physical labor and is still undergoing medical testing and treatment with an indefinite recovery period, yet it appears reasonably certain he will be able to engage in the same or other gainful occupation within a foreseeable period of time, he is entitled to benefits for temporary total disability."
Because of our holding that Mr. Hopes was temporarily totally disabled through January 20, 1992, we pretermit the issue of whether plaintiff would be qualified for temporary total disability under either doctrine of working in pain[3] or the odd-lot doctrine.[4]

Award of Fixed Duration
The hearing officer held that plaintiff's temporary total disability benefits would lapse upon his being discharged from his physician's care following back surgery to eliminate the newly discovered problem, or by the end of June 1992 should plaintiff *686 decline to have the operation. The law applicable to the duration of recipient awards was amended in 1983 to require payment "during the period of such disability." LSA-R.S. 23:1221(1).
"Under the previous version of R.S. 23:1222, which was excised from the Worker's Compensation Act by Act 1983, No. 1, Sec. 1, the trial court was empowered `to in its discretion, award compensation for a fixed number of weeks to be based upon the probable duration of such [temporary total] disability'. With the 1983 amendments, however, the legislative [sic] withdrew this authority and an award of temporary total disability benefits for a fixed period is no longer allowed."
Bailey v. Zurich American Insurance Co., 503 So.2d 611, 615 (La.App. 4th Cir.1987). In the present case, Mr. Hopes proved his temporary total disability at the hearing. To the extent that the hearing officer's judgment awarded Mr. Hopes temporary total disability benefits until his disability ceases, it is correct. See Bailey, supra; Brewster, supra. However, to the extent that plaintiff may still be disabled under the odd-lot or working in pain doctrine, both applicable to this case arising under the 1983 Act, we reverse the close-ended award of disability benefits to Mr. Hopes. An award of temporary total disability benefits until a specific point in the future is contrary to the intent of LSA-R.S. 23:1221(1). Jim Walter Homes v. Lewis, 544 So.2d 485, 490 (La.App. 2d Cir. 1989). Because plaintiff's total disability existed at the date of the hearing and was of indefinite duration, Mr. Hopes was entitled to a finding of temporary total disability "during the period of such disability." Bailey, supra; Brewster, supra, 469 So.2d at 346.

Rehabilitation
Plaintiff next argues that defendant failed to provide plaintiff with adequate rehabilitation services as required of former employers by the 1983 Act.
LSA-R.S. 23:1226 provides in pertinent part:
A. When an employee has suffered an injury ... which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment...
Prior to the 1983 Act's effective date, employers were not required to provide such services. Koslow v. E.R. Desormeaux, Inc., 428 So.2d 1275 (La.App. 3d Cir.1983). The purpose of this statute is to educate and increase the job marketability of employees who cannot return to their former positions. Frazier, supra, 552 So.2d at 544. Cf., Anderson, 505 So.2d at 206. Even if we were to assume that plaintiff could fill all of the positions presented to Dr. Jackson, their wages were in no way comparable to those plaintiff earned prior to his injury. The positions presented by ConservCo paid in the vicinity of minimum wage, far less than the $8.85 per hour, $513.00 average weekly wage Mr. Hopes enjoyed in 1983. Since plaintiff's injury precludes him from manual labor earning wages equal to those he earned prior to injury, Mr. Hopes is entitled to rehabilitation. See Durbin v. State Farm Fire & Cas. Co., 558 So.2d 1257, 1262 (La.App. 1st Cir. 1990). Merely providing plaintiff with a list of potential employers does not satisfy the requirement of vocational rehabilitation required under LSA-R.S. 23:1226; to the contrary, "[t]hese minimal efforts at vocational rehabilitation certainly fall short of the fundamental requirements." See Pierce v. City of Abbeville, 602 So.2d 170 (La.App. 3d Cir. 1992). Since it was clear that plaintiff would never again be capable of performing heavy manual labor, Dr. Jackson advised that Mr. Hopes "start considering getting into a vocational rehabilitation program in order that he can learn how to do some type of sedentary work or light work that would not put any strain on his back...." (Emphasis ours.) Plaintiff is clearly entitled to true vocational rehabilitation.

PENALTIES AND ATTORNEY'S FEES
Given the above determinations, the question remains whether claimant is entitled to attorney's fees and penalties. *687 The 1983 amendment to the Worker's Compensation Act requires different standards to be applied for each. Any employer or insurer who at any time discontinues payments of claims properly made, when such discontinuance is found to be arbitrary, capricious or without probable cause, subjects the employer or insurer to payment of reasonable attorney's fees. Theriot v. American Employees Ins. Co., 482 So.2d 648 (La.App. 3d Cir.1986). On the other hand, penalties will be assessed unless the employee's right to such benefits has been reasonably controverted. The test to determine whether the employee's right has been reasonably controverted turns on whether the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Chelette v. American Guar. and Liability Ins., 480 So.2d 363 (La.App. 3d Cir.1985).
"An employer who fails to investigate an employee's compensation claim subjects itself to statutory penalties and attorney's fees. See Dowden v. Liberty Mut. Ins. Co., 346 So.2d 1311 (La.App. 3d Cir.), writ denied, 350 So.2d 674 (1977); Billiot v. Alton's Bakery of Morgan City, Inc., 398 So.2d 624 (La.App. 1st Cir.1981); Naquin v. Texaco, Inc., 423 So.2d 31 (La.App. 1st Cir.1982). There must be a real or substantial issue to deny benefits to a disabled employee. Lee v. National Tea Co., 378 So.2d 134 (La.App. 3d Cir.1979), (citing Guillory v. Travelers Insurance Company, 294 So.2d 215 (La.1974))."
Nelson v. Roadway Exp., Inc., 588 So.2d 350, 355 (La.1991).

PENALTIES
As previously discussed, the evidence reveals that deficient rehabilitative efforts were extended to plaintiff and that ConservCo initiated its services with an inaccurate assessment of his capabilities, entitling claimant to statutory penalties. Federal Rural Elect. v. Simmons, 568 So.2d 644 (La. App. 3d. Cir.), writ denied, 571 So.2d 655 (La.1990). A worker is not entitled to statutory penalties in a worker's compensation case where his employer relied upon competent medical advice, but the facts of this case do not lend themselves to this defense due to the inaccurate representations of ConservCo, the "rehabilitation" firm hired by the compensation insurer, and the insurer's knowledge that plaintiff could not earn 90% or better of his prior wages in the positions suggested to Dr. Jackson.
"The courts have repeatedly held that there is no justification for terminating benefits where the employer has such knowledge and information. Watson v. Amite Milling Co., Inc., 560 So.2d 902, 908 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990), citing Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983); Condall v. Avondale Shipyards, Inc., 436 So.2d 595 (La.App. 4th Cir.1983); and Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363 (La.App. 3rd Cir.1985)."
Anthony, supra, 589 So.2d at 50.

Attorney's Fees
In Chelette, supra, at 367-368, this court observed:
"The 1983 revision of R.S. 23:1201.2 provides in pertinent part:
`Any insurer liable for claims arising under this Chapter, ..., shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, ... The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter.'
This revision, unlike the statutory penalties section, retained the same standard as the repealed statute for the imposition of attorney's fees. Attorney's fees are imposed if the insurer is found to be arbitrary, *688 capricious, or without probable cause in its failure to pay a claim within 60 days after receipt of written notice of same."
There can be no question but that plaintiff is entitled to attorney's fees for defendant's refusal to pay benefits following the determination of Dr. Jackson that plaintiff had indeed been physically disabled since at least April 1991.
"If, subsequent to an initial optimistic report, an insurer receives medical information indisputedly showing disability at a particular date, the insurer may not blindly rely upon the earlier report and solely on its basis avoid penalties for arbitrary nonpayment of compensation benefits. See Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976) and its progeny."
Slate v. Travelers Ins. Co., 556 So.2d 903, 906 (La.App. 3d Cir.1990); Guillory v. Soloco, Inc., 570 So.2d 139, 144 (La.App. 3d Cir. 1990); Hodges v. Sentry Ins. Co., 492 So.2d 193 (La.App. 3d Cir.1986). Our review of the record suggests that an award of $5,000.00 for attorney's fees is appropriate.

DECREE
That part of the hearing officer's decision finding that plaintiff, Joshua Hopes, is not eligible for permanent total disability is affirmed as is the finding in favor of plaintiff's temporary total disability status between January 20, 1992 and June 1992. The remainder of the hearing officer's decision is vacated. Plaintiff, Joshua Hopes, is found to be temporarily totally disabled and entitled to benefits from date of injury, said benefits to continue until a lawful basis for a change in status occurs, together with legal interest from date of judicial demand until paid on all past due benefits. Plaintiff is further entitled to true rehabilitation. Defendants, Domtar Industries and Commercial Union Insurance Company, are assessed with statutory penalties in the amount of 12% as provided for in LSA-R.S. 23:1201(B). Plaintiff is awarded attorney's fees in the amount of $5,000.00 for the hearing level and on appeal. Defendant is taxed with all costs at the hearing level and on appeal.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] On May 9, 1991, the rate was further reduced to $215.86, ironically due to federally mandated increases in the minimum wage.
[2] None of the parties or witnesses were able to explain why it took 16 months for the reduction in benefits to occur.
[3] "Under the doctrine of working in pain, if the claimant's injuries are such that the performance of important functions of his old trade involve substantial pain and suffering, then he is deemed disabled. Johnson v. Monroe Pulpwood Co., Inc., 505 So.2d 862 (La.App. 2nd Cir.1987)."

Charles v. Aetna Cas. and Sur. Co., 525 So.2d 1272, 1274 (La.App. 3d Cir.1988). In Zeigler v. Pleasant Manor Nursing Home, 600 So.2d 819, 821 (La.App. 3d Cir.1992), and Gobert v. PPG Industries, Inc., 534 So.2d 111 (La.App. 3d. Cir. 1988), writ denied, 538 So.2d 596 (La.1989), we expressly reaffirmed our support of the doctrine of working in pain. An employee who can only perform his work in such pain is entitled to an award of temporary total disability even if it is believed that he will one day recover. Charles, supra; Green v. Jackson Rabbit Delivery Service, 506 So.2d 1345 (La.App. 2d Cir.1987). These cases are controlling in the case before us as Hopes' accident occurred in 1983.
[4] Although overruled for injuries from accidents occurring in 1990 and subsequently, and inapplicable under the 1983 Act to claimants in cases in which the employee is seeking permanent rather than temporary total disability, Breaux v. Travelers Ins. Co., 526 So.2d 284 (La.App. 3d Cir.1988); Anderson v. Aetna Cas. & Sur. Co., 505 So.2d 199 (La.App. 3d Cir.1987), the odd-lot doctrine does apply to workers seeking temporary total disability who were injured in accidents occurring during the effective period of the 1983 Act. Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3d Cir.), writs denied, 497 So.2d 312 (La.1986); see also Gobert, supra; DeGruy, supra.