644 So.2d 705 (1994)
Emmitt WILLIAMS
v.
CAPITOL STEEL.
No. 93 CA 2154.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
*706 J. Arthur Smith, III, Baton Rouge, for plaintiff-appellee, Emmitt E. Williams.
Frank M. Coates, Jr., Baton Rouge, for defendants-appellants, Capitol Steel and Highlands Ins.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
SHORTESS, Judge.
This is an appeal by Capitol Steel, Inc. (Capitol), and Highlands Insurance Company from a judgment in a worker's compensation hearing finding Emmitt E. Williams (plaintiff) was entitled to supplemental earnings benefits (SEB).
Plaintiff was injured twice in the course of his employment as a shear operator for Capitol. The first accident occurred October 4, 1988, when a load of steel slipped from the crane and pinned plaintiff against a steel rack. Plaintiff reported this accident to his superiors, but no worker's compensation claim was filed. Then in August 1989, plaintiff was re-injured when a steel platform on which he was working gave way and he fell to the ground. Plaintiff filed a worker's compensation claim after this second accident and collected $209.60 per week from August 23, 1989, to October 30, 1991. Capitol terminated benefits after several neurosurgeons and orthopedic specialists determined plaintiff was magnifying his symptoms, that no objective findings supported his complaints of pain, and that he could go back to work. Plaintiff subsequently sought a psychiatric evaluation. A psychiatrist and psychologist determined plaintiff had psychological problems which caused him to believe he was still in pain and which rendered him unable to work.
The primary issue on appeal is whether plaintiff is disabled.
*707 The law is clear that mental injury, even absent any apparent signs of physical trauma, may be compensable. Williams v. Regional Transit Authority, 546 So.2d 150 (La.1989). However, because of the possibility of symptoms being feigned in cases concerning mental injuries, courts should exercise extreme care in determining whether an employee proved he suffered such an injury, and whether the injury is causally related to the accident. Williams, 546 So.2d 150; Jackson v. D.C. Kile, Inc., 614 So.2d 225, 227 (La.App. 3d Cir.), writ denied, 616 So.2d 702 (La.1993).
Plaintiff was treated by Dr. Charles Strange, an orthopedist, from August 1989 through August 1992. In the beginning he diagnosed plaintiff with soft tissue injuries. Plaintiff's continued complaints which exceeded Strange's objective findings, led Strange to refer plaintiff for another orthopedic opinion and three neurological evaluations.[1] In October 1991, Strange reported to the insurer that he and three neurosurgeons felt plaintiff was not a candidate for surgery, that plaintiff had undergone medications and physical therapy exercises, and that he had nothing else to offer in terms of orthopedic care. He assigned a ten percent permanent physical impairment and recommended plaintiff return to his previous employment on a progressive scale for lifting and endurance as of November 1, 1991. On November 7, 1991, he reported to the insurer that plaintiff's complaints were beyond the scope of his objective findings. He still felt plaintiff had reached maximum medical improvement as it pertained to orthopedic care, but recommended psychological testing. Plaintiff also was evaluated by Dr. Thomas Flynn and Dr. John Clifford, both neurosurgeons, neither of whom could make objective findings to support plaintiff's complaints and both of whom found symptom magnification.
Ultimately, the medical records showed plaintiff had one protruded cervical disk, degenerative disk disease, diabetes myelitis type II, and stress-related hypertension. The various doctors ranged from 5 to 15% in their assignments of disability ratings for plaintiff. And while none disputed that plaintiff may be suffering from some degree of pain or impairment, all the doctors invariably found plaintiff showed a high degree of symptom magnification, and none felt he could not work.
In November 1991, the insurer elected to terminate benefits based on the medical reports. However, after a hearing, the insurer was ordered to pay for psychological testing and treatment before terminating. Plaintiff selected Dr. Navin Patel, a psychiatrist, who evaluated plaintiff and found he had psychological factors which affected his physical condition, resulting in a "functional overlay." He found plaintiff to be emotionally disturbed, depressed, and highly anxious.
Patel testified plaintiff suffered from somatoform pain disorder, a psychiatric diagnosis for pain without a physiologic basis. He believed plaintiff's pain is subjectively real and he is not malingering, even though there may be no objective findings which support plaintiff's complaints.[2] Patel found that plaintiff, prior to the accidents, had been a stable, functioning individual who was well adjusted. Some of the factors he used in ruling out malingering were that plaintiff has been married happily, has been a good provider, has a good work history, has worked in his field for ten years (four of which were at Capitol), and has no previous psychiatric chemical dependency or legal history. Patel testified that "to me [this] means that he was a very well-adjusted individual prior to this injury."
Dr. William Gouvier, a psychologist and director of the Family Therapy Clinic, Inc., conducted a battery of tests on plaintiff at *708 Patel's request. These tests included a detailed interview; a complete/incomplete sentence blank test; the Beck Depression Inventory; projective drawings of house, tree, and person; and a dot-counting test. Gouvier ultimately determined that "[t]his is a man that made his living with his back, with his strength, with his physical abilities. He didn't ... get the jobs he got because he was all that smart or because he learned all that well, but he got the jobs that he got because he could work hard." Gouvier opined that when plaintiff lost his primary strengthhis back"Mr. Williams' psychological bulwark fell down like a house of cards."
Gouvier agreed with Patel that the first approach to treatment for plaintiff was a physical approach to managing pain. He also supported Patel's opinion that if the physical approach to managing pain did not work then the problem was a psychological one, on which the focus of treatment should be placed. Gouvier testified the primary difference between a rehabilitation setting and a psychiatric setting for treatment is that the psychiatric treatment deals with the mental disorder which is preventing the patient from adjusting and continuing with life. He further testified, "If I thought Mr. Williams was frankly malingering, I would have given him that diagnosis. I don't have qualms about that."
Dr. Craig Waggoner, the psychologist who supervised plaintiff in the Pain Management Program, originally diagnosed plaintiff as suffering from somatoform pain disorder, but after observing plaintiff in the pain management program changed his diagnosis to malingering. Waggoner found plaintiff lacked motivation and willingness to do the activities he was being taught to get better. He testified he did not believe plaintiff would benefit from further psychiatric or psychological treatment because plaintiff did not want to change.[3] Dr. Randy Culver, a psychiatrist who examined plaintiff at the defense's request, found plaintiff was malingering.
Based on all of the testimony, we cannot say the trial court was clearly wrong in choosing to believe Patel and Gouvier. They were both highly qualified professionals who conducted extensive testing. Waggoner, while eminently qualified, conducted a program which emphasizes physical rehabilitation and assumes participants are willing and motivated. Waggoner stated the pain management program is not equipped to handle patients with a complex psychological picture. Finally, Culver's opinion was based on a short interview and plaintiff's prior medical records. He did not conduct any psychological testing.
The weight the trial judge places on expert testimony and his resulting findings of fact are entitled to great weight on appeal. Brown v. J. Manoco, Inc. 555 So.2d 29, 32 (La.App. 1st Cir.1989), writ denied, 558 So.2d 585 (La.1990). A trial court's determinations of fact based on a reasonable evaluation of the credibility of the evidence will not be disturbed unless those findings are clearly wrong. Lanus v. Gulf Wandes Corp., 470 So.2d 492 (La.App. 1st Cir.1985). This is true even where there is a conflict in testimony. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Furthermore, positive findings of medical experts are given greater weight than negative findings regarding the existence of a particular condition. Campbell v. Luke Construction Co., 465 So.2d 688 (La. 1985). The hearing officer was not clearly wrong in assigning greater weight to Patel's and Gouvier's testimony, and this factual finding will not be disturbed on appeal.
Furthermore, the determination of disability in a worker's compensation case is a legal rather than purely a medical determination, and this determination is based on the totality of the evidence. Jackson, 614 So.2d at 228; DeGruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1st Cir.), writ denied, 530 So.2d 568 (La.1988).
*709 Plaintiff testified that although he reported the first accident, no written report was made, and he did not miss work. Although he needed help getting out of bed, he managed to go to work, as he was instructed to do, punch in, and perform light duty. He did not receive worker's compensation for this injury and stated he used his eighteen days of personal vacation time to recuperate. After the second accident, he was unable to work because of the pain and requested medical treatment.
Plaintiff further testified he had been married twenty-four years, had four children who still lived at home, had never sued anyone, had never been arrested, had built (not personally) and paid for his own home, was a deacon in his church since 1975, and was in good health prior to the first accident. His work history showed he began working at age fifteen on a farm and had worked as a farm worker, tractor driver, carpenter, roofer, shear operator, crane operator, auto serviceman, and sawman. He had been a shear operator for fifteen years before the accident.
Plaintiff's wife testified he was in good health before the accident, helped out around the house, and was athletically and physically active, but that since the accident he had been unable to do the same activities and was withdrawn and depressed.
Based on the totality of the evidence, we cannot say the trial court was clearly wrong in finding plaintiff has a "functional overlay" which renders him disabled and requires treatment. Certainly the evidence presents two permissible views of the evidence. If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 883 (La.1993); Patin v. Duplessis Pontiac-Buick-GMC Trucks, Inc., 632 So.2d 790 (La.App. 1st Cir.1993), writ denied, 638 So.2d 1096 (La.1994). The view the trial court chose was a permissible, reasonable view based on the evidence presented at trial.
In answer to this appeal, plaintiff contends the hearing officer's only error was in determining plaintiff was entitled to SEB rather than finding he was temporarily totally disabled. The neurologists, physical therapists, and orthopedists all gave plaintiff approval to return to light duty, at a minimum. However, Gouvier and Patel testified that while he may be physically capable of certain employment, mentally he is not.[4]
In order to be entitled to SEB, an injured employee must be unable to earn 90% or more of the wages he received at the time of the injury. LSA-R.S. 23:1221(3). This statute is designed to provide benefits for one who is able to work but suffers diminished earning capacity.
Physically, plaintiff's earning capacity is only diminished. Mentally, however, plaintiff is unable to function in a work environment. Gouvier and Patel testified plaintiff had not been treated specifically for the mental aspect of his disability. His treatment has always focused on resolving his physical disability, as opposed to focusing on his mental disability which may, in turn, resolve some of the perceived physical incapacities. The evidence shows plaintiff continues to be temporarily totally disabled.
In conclusion, this court does not disturb the factual and credibility findings of the trial court. However, the trial court erred in finding plaintiff was entitled to SEB, and we reverse that finding. Plaintiff suffers from a continuing disability, and the hearing officer should have found that he continues to be temporarily totally disabled. Judgment is hereby rendered awarding plaintiff temporary total disability benefits rather than SEB. All costs are taxed to defendants.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Strange referred plaintiff to Drs. Randall Lea and Thomas Whitecloud, orthopedists, and to Drs. William Fisher and Robert Hanchey, neurosurgeons. All agreed with Strange that surgery was not required or that plaintiff would not respond to surgical intervention. All also reported symptom magnification and behavioral inconsistencies with the plaintiff's reports of pain.
[2] The mental health professionals who testified all agreed that what distinguishes malingering from somatoform pain disorder is that a malingerer has a conscious intent to fabricate or exaggerate pain symptoms to receive secondary gain.
[3] During his stay at Rehabilitation Hospital and participation in the pain program, plaintiff was evaluated by Dr. Peter Dorsher, medical director at the hospital, and his team of a psychologist (Waggoner), physical therapist, recreational therapist, occupational therapist, and social workers. Dorsher testified he would not put physical restrictions on plaintiff. He also testified plaintiff's poor performance in the pain program could "certainly" have been influenced by an emotional condition.
[4] Plaintiff argues the "odd lot" doctrine should have been applied to determine plaintiff is temporarily totally disabled because he can no longer do heavy labor and is functionally illiterate, rendering his job possibilities practically nil. Plaintiff has a continuing disability; therefore, it is not necessary to apply this theory.