663 So.2d 96 (1995)
Dorothy A. HOWELL, Plaintiff-Appellee,
v.
SERVICE MERCHANDISE COMPANY, INC., Defendant-Appellant.
No. 95-79.
Court of Appeal of Louisiana, Third Circuit.
August 9, 1995.
*97 James C. Downs, Alexandria, for Dorothy Howell.
Stephen C. Resor, New Orleans, for Service Merchandise Co.
Before LABORDE, WOODARD, and AMY, JJ.
WOODARD, Judge.
This appeal arises from an action for temporary total disability workers' compensation benefits.

FACTS
Plaintiff, Dorothy Howell, was injured when a co-worker dropped a box containing a compact stereo onto her face during the course of her employment for defendant, Service Merchandise Company, Inc. She was struck on the bridge of her nose, knocking her glasses from her face. She was able to avoid falling to the ground by bracing herself against some boxes stacked nearby. She alleges that this accident aggravated her previously existing back problems, which in turn caused her to sink into chronic pain syndrome and depression. She was fifty-five years of age at the time.
Howell continued to work for Service Merchandise despite her depression, increasing pain in her neck and back, and numbness in her legs until she was overtaxed during the 1992 Christmas rush. She voluntarily resigned her position at Service Merchandise on December 16, 1992.
Service Merchandise paid medical benefits on Howell's behalf through December 16, 1992, but refused to pay temporary total disability (TTD) benefits after that date. Howell filed a claim for disputed benefits on March 31, 1993, alleging that she was disabled as a result of a mental injury. The parties settled all claims for the period between April 15, 1992 and December 17, 1993, prior to trial on August 4, 1994. The hearing officer rendered judgment in Howell's favor *98 on August 29, 1994, finding that she was temporarily and totally disabled since December 17, 1993 as a result of a mental injury attributable to the April 15, 1992 workplace accident.
Service Merchandise now appeals, complaining that the hearing officer erred in (1) finding that Howell's back condition was attributable to the April 15, 1992 accident; (2) finding that any such aggravation caused her to suffer a mental injury; (3) finding that any such mental injury caused her to be temporarily and totally disabled; and (4) assessing Howell's psychologist's fee against Service Merchandise.

LAW
An appellate court may reverse a hearing officer's decision regarding a claim for workers' compensation benefits only if she has committed manifest error therein. Bruno v. Harbert International, 593 So.2d 357 (La.1992). Consequently, we must affirm the hearing officer's findings if they are reasonable in light of the record viewed as a whole. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).

I. INJURY
To obtain workers' compensation benefits, an employee must prove by a preponderance of the evidence that she suffered a personal injury as a result of an accident arising out of and in the course of her employment. La.R.S. 23:1031. However, a mental injury or illness caused by a physical injury to the employee's body, such as Howell claims in the case sub judice, shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence. La.R.S. 23:1021(7)(c). Aggravation of a pre-existing injury can itself constitute a disabling injury, Doucet v. Baker Hughes Production Tools, 93-3087 (La. 3/11/94); 635 So.2d 166; a fortiori, it may also satisfy the physical injury requirement necessary to prove a disabling mental injury.
Service Merchandise does not dispute that Howell was involved in a workplace accident. Therefore, Howell must prove by a preponderance of the evidence that the workplace accident aggravated her pre-existing medical problems, and by clear and convincing evidence that the aggravation of the pre-existing problems caused her to suffer a mental injury.

A. Physical Injury
Howell clearly experienced pain in her neck, back, and hip prior to the accident as a result of injuries that she sustained in a 1988 automobile accident. To mitigate this pain, she began to visit Dr. Karri Gramlich, a chiropractor, on March 18, 1992. Dr. Gramlich saw Howell on the day before her workplace accident, and her notes indicate that Howell was in considerable pain at the time. Howell alleges, however, that the areas of her neck and back injured in the accident were not the same areas that hurt before and that her pain became much more severe and constant afterwards. She testified that she was no longer able to bend over or lift heavy objects after the accident, whereas she had been able to do so beforehand. Her daughter, who saw her three to four times per week, testified that Howell was not suffering any major health problems before the accident and that her problems attributable to the automobile accident had resolved.
In evaluating the evidence, the uncontradicted testimony of a witness should be accepted as true, even if she is a party, in the absence of circumstances casting suspicion on the reliability of her testimony. Hopes v. Domtar Industries, 627 So.2d 676 (La.App. 3 Cir.1993). There is no objective reason to discount Howell's credibility, whom Dr. John Patton, her treating neurosurgeon, testified was neither malingering nor attempting to deceive him regarding her problems. In fact, Dr. Ronald Pryor, a clinical psychologist, testified that Howell actually tried to deny some of her emotional complaints. Moreover, the hearing officer observed Howell's demeanor and explicitly stated that she was impressed by her candor. Such credibility determinations by the hearing officer are entitled to great weight because only she has observed "the variations in demeanor and *99 tone of voice that bear so heavily on the listener's understanding and belief in what is said." Rosell v. ESCO, 549 So.2d 840 (La.1989).
Significantly, Howell began to experience numbness and weakness in her left leg and foot after the accident, which she had not suffered before. Dr. Gramlich recommended neurosurgical and orthopedic evaluation to ascertain the cause of this symptom, which can be indicative of serious problems. Several of her physicians also observed this symptom.
Dr. Gramlich also noted that Howell exhibited mild muscle spasms in the cervical area of her back prior to the accident but that afterwards, she exhibited moderate to severe muscle spasms in the entire cervical and upper thoracic spine. Dr. Gramlich's diagnosis of Howell changed after the accident from "cervical disc syndrome, cervical kyphosis, cervical myofascitis, thoracic subluxation, and disorder of sacroiliac joint" to "cervical sprain/strain, cervical neuralgia, thoracic brachial neuritis/radiculitis, and thoraco/lumbar sprain/strain."
Dr. Ray Beurlot, Howell's treating orthopedic surgeon, opined, on the basis of an EMG/nerve conduction study, that Howell suffers from L5 radiculopathy on the left side and diminished amplitude of the peroneal nerve. Dr. Beurlot stated that he could not relate this problem to the accident to a "reasonable degree of medical certainty," but that her injury was consistent with and could have been caused by such an accident.
Dr. Patton confirmed Dr. Beurlot's diagnosis of L5 radiculopathy. He noted a minimally bulging disc on the central right side at the L5-S1 level after performing a CT scan of her lumbar spine, which he believed was the basis for her complaints of left leg and lower back pain. He opined that she suffered from lumbar spondylosis, a degenerative condition in her back, although he believed that her subjective complaints of pain were excessive relative to this finding. A cervical CT scan and a lumbar MRI were normal. On the basis of the medical evidence and Howell's subjective complaints, Dr. Patton opined that "I think that this lady's condition did exist prior to the stereo accident but I believe the stereo accident caused her to have a flareup or an exacerbation of her pre-existing complaints," although he admitted that he based this opinion on Howell's subjective complaints.
On November 25, 1992, Dr. Jack Hurst, a neurosurgeon, opined for Service Merchandise that Howell's EMG study was consistent with L5 radiculopathy on the left but not conclusive of such a diagnosis. He detected no focal motor or lateralizing neurologic signs to explain her complaints of pain. On January 10, 1994, Dr. Thomas Whitecloud, III, an orthopedic surgeon, found that Howell had a mild L5 radiculopathy and a painful extension in her neck but little in the way of objective evidence of a significant cervical or lumbar spine abnormality.
The medical evidence clearly reveals that Howell began to suffer new symptoms after the workplace accident. Dr. Gramlich's diagnosis was altered significantly, and the testimonies of Drs. Beurlot, Patton, Hurst, and Whitecloud establish that Howell exhibits an objective abnormality in her back that could have been caused by an accident such as she suffered. Consequently, given the great weight that we must afford the hearing officer's findings and her determination that Howell was a credible witness, and accepting Howell's testimony as true, we cannot say that the hearing officer erred manifestly in finding that Howell's medical condition was aggravated by the April 15, 1992 workplace accident.

B. Mental Injury
In order to obtain compensation benefits for a mental injury caused by a physical injury, (1) the claimant must prove by clear and convincing evidence that the physical injury caused the mental injury, (2) the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and (3) the diagnosis must meet the most current criteria established by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. La.R.S. 23:1021(7)(c), (d). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact *100 is highly probable; that is, much more probable than its nonexistence. Bundren v. Affiliated Nursing Homes, Inc., No. 94-808 (La. App. 3 Cir. 2/1/95); 649 So.2d 1177. A claimant's own testimony that he experienced debilitating depression after a work-related back injury, combined with the testimony of family members and a psychologist, can constitute clear and convincing evidence to support a finding that the claimant has suffered a mental injury as a result of the back injury. Lannes v. Jefferson Door Co., 94-1 (La.App. 5 Cir. 5/11/94); 638 So.2d 250.
Howell testified that she has become depressed since the accident and that she desires primarily to be alone. She has stopped attending church, which had been the focus of her social life prior to the accident. She rarely leaves the house and then only to buy groceries. Her daughter and her son-in-law testified that she was a normal, happy person prior to the accident, but that she sank into depression during the months following the accident on April 15, 1992. According to her daughter, Howell cries frequently, and she will not go out with her as she used to do prior to the accident. Her son-in-law, an ordained minister, testified that she was an independent and outspoken person prior to the accident but that she became withdrawn and prone to cry easily afterwards. She has no prior history of psychiatric or psychological problems predating the accident, but this has been a consistent theme throughout the reports of the physicians who have treated or examined her afterwards.
Dr. Pryor saw Howell on August 31, 1993. After conducting a clinical interview, a mental status examination, and a Minnesota Multiphasic Personality Inventory (MMPI), he concluded that she suffers from major depressive disorder with significant anxiety and somatic complaints, as well as from a chronic pain syndrome, which causes her to focus excessively on her physical pain to the point where she cannot function normally. Dr. Pryor believed that her depression and chronic pain syndrome were related to the workplace accident, and his opinion was not altered as a result of the medical evidence that Howell's back pained her on the day before the accident.
Dr. Patton agreed, testifying that "it was clear to me that part of her pain problem was due to her reactive depression, that is that the pain was bothering her and the pain was causing her to get depressed and the more she got depressed, the more she hurt, so she had this sort of vicious cycle." Additionally, Dr. Beurlot stated that part of Howell's pain problem was attributable to "reactive depression," and Dr. Whitecloud opined that Howell suffered from major depression with a chronic pain syndrome.
Service Merchandise argues that Howell cannot recover for her mental injury because she failed to prove that Dr. Pryor's diagnosis meets the criteria as established in the current edition of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association, as required by La.R.S. 23:1021(7)(d). However, this technicality is not dispositive in the case sub judice because: (1) Howell was diagnosed with depression and chronic pain syndrome by an experienced clinical psychologist, Dr. Pryor; (2) this diagnosis was corroborated by the opinion of Howell's examining neurosurgeon, Dr. Patton, as well as by the defendant's own expert, Dr. Whitecloud; (3) before rendering a diagnosis, each doctor questioned Howell about her medical history; (4) before rendering his diagnosis, Dr. Pryor conducted an MMPI, a standard objective mental examination in the field, as well as a standard clinical examination; and (5) no evidence in the record suggests that this diagnosis is unreliable. Bundren, 649 So.2d 1177. Thus, we cannot say that the hearing officer's finding that Howell suffered a mental injury which was caused by the workplace accident was manifestly erroneous.

II. DISABILITY
An employee seeking TTD benefits must prove by clear and convincing evidence, unaided by any presumption of disability, that she is physically unable to engage in any employment or self-employment. La.R.S. 23:1221(1)(c). The issue of disability presents a legal, rather than purely medical question, that must be determined through consideration of both lay and medical testimony. Bundren, 649 So.2d 1177. Whether a party *101 has met this burden of proof is a factual finding and will not be disturbed on appeal absent manifest error. Bruno, 593 So.2d 357.
Drs. Patton and Beurlot opined that Howell could return to light duty work, with restrictions that she could not bend over, pick up objects, or stand for extended periods of time. However, Dr. Pryor testified that Howell will require treatment for her depression and chronic pain syndrome before she will be able to return to substantial gainful employment. He believed that she is locked into experiencing pain and depression until she is treated, because depression and chronic pain do not usually clear up spontaneously without intervention. Additionally, Dr. Patton testified that "[I]t was clear to me that part of her pain problem was due to her reactive depression, that is the pain was bothering her and the pain was causing her to get depressed and the more she got depressed, the more she hurt, so she had this sort of vicious cycle." He stated that
I think this lady does need further treatment. I think she needs to be taught coping skills. By that I mean she needs psychological evaluation and support. She may need some psychotropic medications to help her over her depression, and she needs to have her depression treated and try to teach her to deal with this discomfort that she has. Once she's gotten her depression under control, I think she needs to be rehabilitated to the point that she can do some type of light sedentary type activities.
Even Dr. Whitecloud, defendant's examining physician, stated that "[Howell] has a major depression with chronic pain syndrome and this needs to be addressed before she can be considered for any type of gainful employment."
An employee who is unable to return to work as a result of a mental injury is entitled to TTD benefits. Williams v. Capitol Steel, 93-2154 (La.App. 1 Cir. 10/7/94); 644 So.2d 705. The opinions of Drs. Pryor and Whitecloud that Howell must undergo therapy prior to returning to work, as a result of her depression and chronic pain syndrome, combined with Dr. Patton's opinion that she needs psychological treatment and rehabilitation, provide clear and convincing evidence that she cannot work until she has obtained such treatment. Therefore, the hearing officer did not err manifestly in finding that plaintiff is entitled to TTD benefits.

III. COURT COSTS
The hearing officer may render judgment for costs, or any part thereof, against any party, as she may consider equitable. La.C.C.P. art. 1920. The allocation of court costs among the parties is subject to the discretion of the trial court, and its allocation will not be disturbed on appeal absent abuse of that discretion. McConathy v. McConathy, 632 So.2d 1200 (La.App. 2 Cir 2/23/94), writ denied, 637 So.2d 1052 (La. 5/6/94).
The hearing officer, in the case sub judice, taxed as a court cost Dr. Pryor's expert witness fee of $400. It is within the hearing officer's discretion to tax an expert witness's fee as a court cost and to assess this cost against the losing party, particularly when, as here, the witness's testimony contributes significantly to the winning party's success. Hood v. C.J. Rogers, Inc., 94-1162 (La.App. 3 Cir. 3/8/95); 654 So.2d 371. Therefore, she did not abuse her discretion in doing so.

CONCLUSION
For the foregoing reasons, we affirm the decision of the hearing officer in favor of plaintiff-appellee, Dorothy Howell. Costs are assessed against defendant-appellant, Service Merchandise Company, Inc.
AFFIRMED.
AMY, J., dissents.