LINDA DRONET

VERSUS

E-Z MART

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 02-01219
HONORABLE CHARLOTTE L. BUSHNELL,
WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Chief Judge Ned E. Doucet, Jr., Sylvia R. Cooks, Billie Colombaro Woodard, Jimmie C. Peters, and Billy H. Ezell, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

Cooks, J., concurs in part and dissents in part and assigns written reasons.
Woodard, J., dissents and assigns written reasons.

Richard E. Wilson
Cox, Cox, Filo & Camel
723 Broad Street
Lake Charles, LA 70601
(337) 436-6611
COUNSEL FOR PLAINTIFF/APPELLANT:
    Linda Dronet

Shannon Dartez
Hurlburt, Privat & Monrose
Post Office Drawer 4407
Lafayette, LA 70502
(337) 237-0261

**COUNSEL FOR DEFENDANT/APPELLEE:**
E-Z Mart

PETERS, J.

In this workers' compensation case, Linda Dronet appeals a judgment denying her claim for indemnity benefits on the basis that the claim had prescribed. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## DISCUSSION OF THE RECORD

Linda Dronet began employment with E-Z Mart as a manager on June 1, 1996. Allegedly, she injured her hands during the course of her employment on September 14, 1998. Thereafter, she was diagnosed with carpal tunnel syndrome in both hands and reflex sympathetic dystrophy of the right hand. Ms. Dronet's injury necessitated medical treatment, including two surgeries on her right hand. E-Z Mart paid medical benefits and indemnity benefits in connection with the carpal tunnel syndrome.

Ms. Dronet returned to work at E-Z Mart in July of 1999, resulting in E-Z Mart discontinuing payment of indemnity benefits on August 3, 1999. Still, Ms. Dronet continued to undergo regular medical examinations and treatment, and E-Z Mart continued to pay her medical expenses.

Ms. Dronet claims that in August of 2001 she reinjured her right hand in the course of her employment with E-Z Mart while "mopping the floors" with an "industrial-sized mop." Following this alleged reinjury, Ms. Dronet continued to maintain her monthly appointments with her orthopedic surgeon. However, although Ms. Dronet testified that she did inform the doctor that she reinjured her hand, the doctor did not record the new work accident. The doctor did, however, limit Ms. Dronet to part-time work on August 27, 2001. Ms. Dronet discontinued working on January 21, 2002, but E-Z Mart refused to pay indemnity benefits.

On February 18, 2002, Ms. Dronet filed the instant 1008 claim for indemnity

benefits,[1] penalties, and attorney fees, but she alleged September 14, 1998, as the date of her injury. E-Z Mart filed a peremptory exception of prescription. The WCJ held a hearing on only the exception of prescription and thereafter granted the exception. Ms. Dronet now appeals.

**OPINION**

Louisiana Revised Statutes 23:1209(A) provides in part:

> In case of personal injury . . . all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4).

(Footnote omitted.)

Ms. Dronet appeals the judgment of prescription on the basis that she sustained a new injury in August 2001 from a work accident, although the new injury was an aggravation of her preexisting injury. Thus, she contends that because she sustained a new injury, her claim is not subject to an exception of prescription based on the September 1998 injury. E-Z Mart contends that Ms. Dronet's "current medical conditions are clearly a continuation of the conditions diagnosed back in 1998 according to the medical evidence."

Initially, even assuming that E-Z Mart is correct in its assertion that Ms. Dronet's current medical conditions are a continuation of her 1998 injury, we find that as a matter of law Ms. Dronet's claim for supplemental earnings benefits has not prescribed. Specifically, as set forth above, a claim for benefits payable pursuant to

---

[1] Ms. Dronet did not specify the type of indemnity benefits she sought.

La.R.S. 23:1221(3), *i.e.*, supplemental earnings benefits, is not barred until the expiration of three years from the time the last payment was made for temporary total disability benefits, permanent total disability benefits, supplemental earnings benefits, or permanent partial disability benefits. *See* La.R.S. 23:1209(A). In the instant case, because E-Z Mart paid temporary total disability benefits for the 1998 injury until August 3, 1999, Ms. Dronet's claim filed on February 18, 2002, or two years and six and one-half months after the last payment of indemnity benefits, is timely for the payment of supplemental earnings benefits arising out of the original 1998 injury. *See generally Dufrene v. Video Co-op*, 02-1147 (La. 4/9/03), 843 So.2d 1066. However, any claim for temporary total disability benefits arising out of the 1998 injury is not timely because more than one year has elapsed since the making of the last payment of indemnity benefits for the 1998 injury. Accordingly, we reverse the grant of the exception of prescription as to any claim for supplemental earnings benefits.

Nevertheless, Ms. Dronet may maintain a claim for temporary total disability benefits if she proves that she sustained an aggravation of her preexisting injury in August of 2001 through a work accident.[2] As a matter of law, "[p]reexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce . . . disability for which compensation is claimed."*Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320, 324 (La.1985). Still, the employee has the burden of establishing a work-related accident. *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). "A worker's testimony alone may be sufficient to discharge this burden of proof,

---

[2]Even though Ms. Dronet's 1008 form specifies the date of injury as being September 14, 1998, her attorney explained at trial that the date was "just a typo." We find that the pleadings were expanded in any event by the admission of evidence without objection regarding the alleged new injury of August 2001. See La.Code Civ.P. art. 1154: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading."

3

provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Id.* at 361. Corroboration of the employee's testimony may be provided by the testimony of fellow workers, spouses or friends as well as by medical evidence. *Id.* In determining whether the employee has discharged her burden of proof, the WCJ should accept as true a witness's uncontradicted testimony, even though the witness is a party, unless there are circumstances that cast suspicion on the reliability of this testimony. *Id.* The WCJ's determinations as to whether the employee's testimony is credible and whether she has discharged her burden of proof are factual determinations which we may not disturb on review unless they are clearly wrong. *Id.*

According to Ms. Dronet, she reinjured her right hand while she was "mopping the floors" with an "industrial-sized mop." She described the incident as follows: "[I]t looked like just a bolt of lightening went through my hand, and it hurted [sic] me, and ever since then the hand is progressively getting worse . . . . It is not getting any better." There is no testimony or medical evidence to corroborate Ms. Dronet's testimony. In fact, at the time of the alleged new injury in August of 2001, Ms. Dronet was already under the monthly care of Dr. R. Dale Bernauer, a Lake Charles, Louisiana orthopedic surgeon, in connection with the preexisting injury. While Ms. Dronet testified that she did inform Dr. Bernauer of her new injury, he did not record any new injury. Yet, following the monthly exam of August 27, 2001, the doctor did record that Ms. Dronet stated that she was working full time. Moreover, within the months preceding the alleged new injury, Dr. Bernauer reported that Ms. Dronet continued to have pain in her hand and that her hand was tender and reddened. Further, just two months prior to the alleged new injury, Ms. Dronet also saw a Dr.

4

Ronald S. Kober, "complaining of severe pain in [her] right hand," and the doctor suggested a stellate ganglion block.

Apparently, the WCJ found that Ms. Dronet failed to prove she sustained a new injury in August of 2001. We find that the foregoing evidence and lack of corroboration provided the WCJ with a reasonable basis for her factual findings. We do note that Dr. Bernauer stated in a letter to Ms. Dronet's attorney dated July 25, 2002, that he was of the opinion that Ms. Dronet's "employment as a cashier did aggravate her condition." However, pursuant to La.R.S. 23:1021(1), an accident is defined in part as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently . . . and directly producing at the time objective findings of an injury *which is more than simply a gradual deterioration or progressive degeneration*." (Emphasis added.) The WCJ could have concluded that Dr. Bernauer's opinion in that regard established only that Ms. Dronet's condition was a gradual deterioration resulting from her job duties as a cashier, and not that Ms. Dronet sustained an aggravation of her condition from an actual, identifiable, precipitous event.

Further, while Dr. Bernauer did reduce Ms. Dronet to part-time work following the alleged new injury, he did so without giving any reason for this action other than the fact that Ms. Dronet informed him at that time that she was working full time. Additionally, when Dr. Bernauer gave Ms. Dronet a full work excuse some five months after the alleged work accident, he did not give any reason for doing so other than that Ms. Dronet was having some problems at work. Without more, we do not find that the WCJ was clearly wrong in rejecting Ms. Dronet's assertions of a new injury. While we might have weighed the evidence differently, we cannot overturn the WCJ's factual findings unless they are clearly wrong. Thus, we affirm the WCJ's

5

grant of the exception of prescription as it relates to temporary total disability benefits.

At the hearing on the exception, the WCJ stated: "This matter comes before the Court on an Exception of Prescription filed on behalf of E-Z Mart." Because the case was not first submitted to the WCJ on the merits of Ms. Dronet's claim, we cannot render judgment on Ms. Dronet's entitlement to supplemental earnings benefits other than to determine that any claim in that regard has not prescribed. *See* Uniform Rules—Courts of Appeal, Rule 1-3 (providing that "Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise). Thus, we remand this case for proceedings on the merits of Ms. Dronet's entitlement to supplemental earnings benefits, penalties, and attorney fees.

**DISPOSITION**

For the foregoing reasons, we reverse the WCJ's grant of the exception of prescription as to any claim Ms. Dronet has for supplemental earnings benefits. We affirm the judgment in all other respects and remand this case for further proceedings on the issues of supplemental earnings benefits, penalties, and attorney fees. We assess fifty percent of the costs of this appeal to Linda Dronet and fifty percent to E-Z Mart.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 03-212

LINDA DRONET

VERSUS

E-Z MART

**COOKS, J., Dissents in part and Concurs in part.**

I would reverse that portion of the judgment below granting the exception of prescription as it relates to temporary total disability. I am satisfied the record sufficiently establishes the claimant sustained an aggravation of her pre-existing work related condition. I concur in that position of this court's opinion finding the claimant's SEB claim has not prescribed. I do not feel as constrained as the majority in proceeding to rule on the merits of the claimant's SEB claim.

SRC

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

LINDA DRONET

      Plaintiff - Appellant

Versus

E-Z MART

      Defendant - Appellee

      On appeal from Office of Workers' Compensation - District 3 [       Number 02-01219], for the Parish of Calcasieu, State of Louisiana; Workers' Compensation Judge Charlotte L. Bushnell, presiding.

Woodard, J., dissenting.

      I must respectfully disagree with the majority's opinion because there is ***nothing*** in the record or in the briefs, submitted on appeal, which suggests that these parties sought a determination regarding Ms. Dronet's right to receive ***SEB*** benefits; thus, prescription, as it relates to SEBs, is not before us. As such, any holding on this issue is inappropriate and unnecessary.

      On the other hand, the parties, clearly, did expect us to reconcile the issue of whether Ms. Dronet's claim for ***TTDs*** had prescribed. The majority opinion disposed of her claim for TTDs by concluding that the evidence presented could support a finding that her reinjury was nothing more than a gradual deterioration resulting from her job duties as a cashier and not an aggravation of her condition from an actual, identifiable, precipitous event.

      However, the evidence is contrary to the majority's finding, which is based, solely, on speculation. Ms. Dronet's ***unrefuted*** testimony, describing the August 2001 accident and her report to her superiors; her effort to see Dr. Bernauer on the day this incident occurred; her untainted credibility; and the medical evidence, indicating an aggravation of her preexisting injuries, sufficiently demonstrate that she met her

burden of proving the existence of a second accident and reinjury; thus, beginning a new prescriptive period.[1]

**INJURY**

In August of 2001, Ms. Dronet informed her employer that she reinjured her right hand while "mopping the floors" with an "industrial sized mop" at the E-Z Mart store she managed. She emphasized the awkward nature of the mop by stating: "I'm not talking about a mop we mop our house with. I am talking about an industrial-sized mop, and they're very hard to handle."

According to her testimony, the "extreme pain" she experienced the day of the subject incident was markedly different from the pain she had been living with for years. She gave the following testimony:

> I have had pain since I have had my surgeries. But that day that I hurt my hand with that mop . . . it looked *like* just *a bolt of lightening* went through my hand, and it hurted me, and ever since then the hand is progressively getting worse, you know. It is not getting any better.

(Emphasis added.) When Ms. Dronet was asked whether her hand had gotten any better after her two surgeries, on November 5, 1998 and June 10, 1999, she responded:

> Before I had my surgery [my hands] hurted [sic] me. They hurted [sic] me so bad I couldn't hardly do anything. Then after I had . . . the two surgeries . . . I went back to work and I was able to perform my job better than I was before I had my surgeries. And then after August [of 2001] . . . I just steady started declining. I mean, it got to the point where I couldn't do anything.

In addition, she was asked if she told anybody about her injury on the day of the second accident, which was unwitnessed. She answered: "Yes, my assistant manager, and I contacted my supervisor." Ms. Dronet remembered telling them: "I hurted [sic] my hand, you know. It was hurting, and it went up into where the incision was, and it went up into the arm and stuff."

---

[1]*See Tate v. Cabot Corp.*, 01-1652 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, *writ denied*, 02-2150 (La. 11/22/02), 829 So.2d 1044.

"In evaluating the evidence, the uncontradicted testimony of a witness should be accepted as true, even if she is a party, in the absence of circumstances casting suspicion on the reliability of her testimony."[2]  Co-workers, spouses, friends, or medical evidence may provide corroboration of the claimant's testimony.[3]

> Proof of an accident must be by preponderance of the evidence, and a claimant's testimony alone may be sufficient to discharge this burden, provided two elements are satisfied. First, no other evidence must discredit or cast serious doubt upon the claimant's version of the incident, and second, his testimony must be corroborated by circumstances following the alleged incident.[4]

***Mrs. Dronet's employer and insurer did not refute her testimony that she suffered a second "accident" and reinjury or her recollection that she reported this incident to her assistant manager and supervisor when it happened.***  Instead, they decided not to call Jeanne Holifield, her supervisor, as a witness at trial, even though they initially indicated that they intended to do so.

Another important piece of evidence supporting Ms. Dronet's contention of reinjury is that soon after the accident and before her regularly scheduled appointments, Ms. Dronet "called for an appointment" with Dr. Bernauer, but he "couldn't see [her] before [her] scheduled appointment." She further recalled: "I told [his office] that I had injured my hand *again* because of the work that I do." (Emphasis added.)

Fireman's Fund Insurance, E-Z Mart, and the majority highlight that Dr. Bernauer's medical records from this examination, on August 27, 2001, do not mention any new work-related event that aggravated her injury.  They believe this is a significant circumstance that casts suspicion on her testimony.  However, there could be many reasons for this lack of a reference to Ms. Dronet's alleged accident.  For example, it could have simply been an oversight or the doctor might not have

---

[2]*Howell v. Serv. Merch. Co.*, 95-79, p. 5 (La.App. 3 Cir. 8/9/95) 663 So.2d 96, 98 (citing *Hopes v. Domtar Indus.*, 627 So.2d 676 (La.App. 3 Cir. 1993)).

[3]*Tate,* 824 So.2d at 463 (citing *Bruno v. Harbert Intern. Inc.*, 593 So.2d 357 (La.1992); *Honeycutt v. Elbert Walker Constr.*, 01-1291 (La.App. 3 Cir. 2/6/02), 815 So.2d 1011).

[4]*Id*. at 463.

thought about it as being important since his concern was a medical, rather than a legal one. Thus, the inference the majority garnered, by the absence from the medical records of a notation of reinjury, that no aggravation of her injury took place, is clearly unfounded.

Importantly, the record viewed as a whole corroborates Ms. Dronet's testimony, and what one should conclude from her August 27th visit, the first visit following her reinjury, is that Dr. Bernauer's diminishment of her work status must have been because of a substantial change in her functionality. Specifically, he ordered a "work excuse," diminishing the number of hours she could work from forty-eight to twenty per week.

Moreover, further *indicia* of reinjury is that ***all*** of her physicians took escalated actions after this visit, in response to her changed condition.

On November 8, 2001, approximately two months after the subject accident, Dr. Rand Metoyer examined Ms. Dronet. He concluded that she was suffering from "bilateral hand pain" and "major depression." His report gives some insight into her credibility and the extent of her disability after reinjury:

> [Ms. Dronet] appears to be a stoic individual, however, when questioned about suicidal thoughts she began to break down and look very tearful. She has a very hard time dealing with the pain. She states that she cannot commit suicide due to her family.

A few days later, on November 19, 2001, Dr. Bernauer examined her at her regularly scheduled appointment, upon which, he determined that she was in need of "pain management."

On December 6, 2001, Dr. Metoyer performed a right stellate ganglion block to relieve her "chronic right wrist and hand pain."

Nevertheless, on January 21, 2002, she told Dr. Bernauer that "the pain remained." Responding, he noted: "She is having some problems at work. She does do paper work and work with a computer. . . . At this time, I am giving the patient a work excuse." Therefore, he recommended that she no longer work as a manager for E-Z Mart.

Dr. Bernauer further corroborated her testimony when he acknowledged: "It is my opinion that [Ms. Dronet's] employment as a cashier did ***aggravate*** her condition." (Emphasis added.)

4

Therefore, a significant number of references in the record and in the medical notations clearly supports that this second accident aggravated, accelerated, or combined with Ms. Dronet's preexisting infirmities *and* created a reasonable possibility of a causal connection between the accident and [her] present condition.[5]

Accordingly, the majority's affirmation of the WCJ's determination that Ms. Dronet failed to prove, by a preponderance of the evidence, the occurrence of a sudden identifiable work-related event in August of 2001 is manifestly erroneous.

PRESCRIPTION

Ms. Dronet filed the subject claim on February 15, 2002. On its face, it states that the date of her injury was September 14, 1998. She received her last TTD payment in July of 1999. Thus, any claim for compensation benefits, arising from her injury of September 14, 1998, would have been filed well past a year from the receipt of her last compensation payment for TTD.

"Generally, the party pleading prescription on a workers' compensation claim bears the burden of proof on the issue."[6] However, where the claimant's petition has clearly prescribed on its face, the burden shifts to the claimant to prove that the prescriptive period was interrupted or suspended.[7]

Ms. Dronet has not asserted any circumstances that could have interrupted or suspended prescription on a claim to recover compensation benefits for her September 14, 1998 injury. Nevertheless, the WCJ erred in ruling that her actual claim had prescribed, since the ***unrefuted*** evidence shows that it arose from a separate sudden identifiable work-related event that occurred in August of 2001.

Although September 14, 1998 is listed on Ms. Dronet's claim form as the date of her second injury, the facts establish that, while she still suffered pain from the original injury, her condition had stabilized until she reinjured her right hand in August of 2001. Immediately afterwards, she felt a different and more "extreme pain," evidencing that this reinjury was due to an identifiable incident—mopping with

---

[5]*See Id.*

[6]*Duplechain v. DOTD*, 02-356, p. 3 (La.App. 3 Cir. 10/2/02), 827 So.2d 567, 568, *writ denied*, 02-2674 (La. 1/31/03), 836 So.2d 68 (citing *Richardson v. Tyson Foods*, 01-427 (La.App. 3 Cir. 10/3/01), 796 So.2d 827).

[7]*Richardson v. Tyson Foods*, 01-427 (La.App. 3 Cir. 10/3/01), 796 So.2d 827.

an industrial mop. Moreover, her attorney acknowledged that he inadvertently put the date of her first injury on the claim form.

This work-related accident established a new prescriptive period for receipt of TTDs.

> Prescriptive statutes are to be construed in favor of maintaining rather than barring actions. Consistent with that precept, Louisiana Code of Civil Procedure Article 1153 should be applied liberally and without undue restriction by technical rules. This is especially true in workers' compensation cases.[8]

"The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect [her] from stale claims and from the loss of non-preservation of relevant proof."[9]

These statutes protect a party against lack of notification of a formal claim within the prescriptive period.[10] Therefore, if the original timely filed pleading gives a party actual notice that the opponent is making a formal claim based on a particular factual situation, no essential purpose of the prescriptive statutes is violated.[11]

Ms. Dronet's claim for TTDs satisfied this legal requirement, thus, it has not prescribed.

### TEMPORARY TOTAL DISABILITY BENEFITS

An employee, seeking TTDs has the burden of proving by clear and convincing evidence, unaided by any presumption of disability, that she is physically incapable of engaging in any type of employment.[12] "To prove a matter by clear and convincing

---

[8]*Baker v. Conagra Broiler Co.*, 93-1230, pp. 7-8 (La.App. 3 Cir. 5/4/94), 640 So.2d 494, 497, *writ denied,* 94-1435 (La. 9/23/94), 642 So.2d 1289 (citations omitted).

[9]*Id.* at 497.

[10]*Id.*

[11]*Id.*

[12]*Rideaux v. Franklin Nursing Home,* 95-240 (La.App. 3 Cir. 11/22/95), 664 So.2d 750, *writ denied,* 95-3093 (La. 2/16/96), 667 So.2d 1058; La.R.S. 23:1221(1)(c).

evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence."[13]

The objective medical evidence overwhelmingly supports Ms. Dronet's unrefuted testimony that she feels "extreme pain" in her hand. In addition, there is no evidence suggesting she exaggerated the severity of her symptoms.

Clearly, after her January 21, 2002 examination, Dr. Bernauer believed her disability to be so severe that it rendered her incapable of working as a manager for E-Z Mart. There is no reason to doubt this assessment of her condition. Therefore, Ms. Dronet proved by clear and convincing evidence that she is unable to engage in substantial employment.

**PENALTIES AND ATTORNEY'S FEES**

Ms. Dronet prayed for statutory penalties and attorney's fees for the Appellees' failure to pay TTDs.[14] However, when they initially denied benefits, it was reasonable for them to believe that her complaints in August of 2001 were neither new nor an aggravation of a preexisting injury. As such, they were reasonable in controverting her claim for TTDs. Therefore, I would find that Ms. Dronet is not entitled to penalties nor attorney's fees.

---

[13]*Id.* at 754.

[14]La.R.S. 23:1201.